BOURLAND *v.* McKNIGHT.

Opinion delivered June 25, 1906.

1. LANDLORD'S LIEN—SUPPLIES—TAKING QUESTION FROM JURY.—In a contest between a landowner and a mortgagee over the proceeds of a sharecropper's interest in the crop, where the landowner's testimony tended to prove that by the terms of his contract with the sharecropper he was to receive one-half of the crop for the use of the land, and the team and tools to make the crop, and that from the proceeds of

the other half of the crop were to be deducted the sums due to the land-owner for supplies and other necessaries furnished the sharecropper to make the crop, it was error to instruct the jury that a cow and calf and medicine and medical attendance do not constitute such supplies to make the crop as will be secured by the landowner's lien; the question whether these things were "supplies and necessaries" within the terms of the contract being for the jury. (Page 430.)

2. Instructions—Presumption.—Where an instruction is inherently defective, it will not be presumed, because the bill of exceptions does not purport to contain all of the instructions, that its defects were cured by others given. (Page 432.)

Appeal from Clark Circuit Court; *Joel D. Conway,* Judge; reversed.

### STATEMENT BY THE COURT.

S. H. Bourland and his wife, Carrie Bourland, let C. D. Reynolds have land to cultivate during the year 1903. In the early part of that year Reynolds gave a mortgage or deed of trust to McKnight & Bro., merchants, to secure them for supplies to be furnished to him and for a debt which he owed them. During the year the Bourlands also furnished certain supplies to Reynolds, and at the end of the year he turned over the crop to them with directions that, after paying what was due them, they should pay the remainder of the proceeds of the crop to McKnight & Bro. Afterwards McKnight & Bro. brought this action against the Bourlands to recover $146.12 as for money had and received for them.

The Bourlands filed separate answers, in which they admitted that they had made a contract with Reynolds by which he had agreed to make a crop on the land of Mrs. Bourland. Mrs. Bourland alleged in her answer that the conditions of this contract were as follows:

"She was to furnish the land, team and tools to work the crop and feed for the team for which she was to receive one-half of the crop; the remainder of the crop was to belong to said C. D. Reynolds after he had paid her for any supplies, money or other necessaries that she might furnish him to make and gather said crop." She further alleged that after paying such debts only about three dollars remained due Reynolds, which she was willing to turn over to plaintiffs.

On the trial the court gave the following instruction asked by plaintiffs:

"The jury are instructed that the plaintiff had a lien upon the crop made in the year 1903 by C. D. Reynolds upon the place owned by the defendants, S. H. and Carrie Bourland, subject to the lien of said defendants for the rents and supplies furnished by them to make said crop. The jury are instructed that a cow and calf and medicine and medical attendance furnished by Dr. Bourland to said Reynolds's family do not constitute such supplies to make the crop with as will entitle the defendants to receive pay for the same before the plaintiffs' account furnished under their deed of trust, nor will the defendants be permitted to deduct the item of costs paid by Dr. Bourland on the security debt held by him against the said C. D. Reynolds as against the deed of trust held by McKnight & Bro."

But the court refused to give the following instruction asked by defendant:

"You are instructed that, if you find from the evidence that the defendants let C. D. Reynolds have land to cultivate and raise a crop of cotton and corn upon, and furnished tools, team and provender necessary to make the crop, and that the said Reynolds was to have a portion of the crop so made for his services, but that the defendants were the owners of the crop, and were to reserve out of the said Reynolds's part of the crop such sums of money as would pay them for the supplies and advances made to the said Reynolds, and that the remainder was to be turned over to the said Reynolds, then in that event the said Reynolds had no such interest in said crop that he could mortgage or sell until the same had been set apart to him, and your verdict will be for the defendant."

The jury returned a verdict in favor of plaintiffs for the sum of $61.60, and the defendants appealed.

*Hardage & Wilson,* for appellants.

The court should have instructed the jury upon the theory contended for by appellants that they were the sole owners of the crop, and that Reynolds had no interest in it, but was to receive a part of the crop as wages for his services. The testimony shows that the contract with Reynolds was not that of an ordinary share cropper, but that the crop was to be appellants' prop-

erty until his account, including medicines and medical attention, was fully paid. He had no title to any part of the crop until a settlement and what remained to him out of one-half the crop was set off to him. 48 Ark. 264; 32 Ark. 436; 34 Ark. 687.

*John H. Crawford,* for appellees.

A mortgage or sale by a share cropper of his interest in a crop is valid, and may be enforced to the extent of the cropper's interest. Kirby's Digest, § 5031; 48 Ark. 293; 54 Ark. 346. See also 69 Ark. 551; 34 Ark. 179; 43 Ark. 284. Since this is not an action in replevin, but for the value of the proceeds of Reynolds's part of the crop remaining after paying for the supplies furnished by the landlords, the instruction contended for by appellants was not applicable.

Riddick, J., (after stating the facts.) The questions in this case relate to a contract made by Mrs. Bourland with Reynolds for the cultivation of land owned by her. The contract was not in writing, and the evidence as to the terms of the contract was somewhat conflicting. The testimony of S. H. Bourland, the husband of Mrs. Bourland, who made the contract for her, tended to support the allegations of the answer. and to show that by the terms of the contract the title to the crop remained in his wife, the landowner, who was to receive one-half of the crop for the use of the land, team and tools, and that from the proceeds of the other half of the crop were to be deducted the sums due Mrs. Bourland for supplies and other necessaries furnished by her to Reynolds to enable him to make a crop, and that after paying such debts Reynolds was to receive any balance left. The testimony of Reynolds as to the terms of the contract was somewhat different from Bourland's, but the defendants had the right to have their theory of the case submitted to the jury. If this testimony of Bourland was correct, then Reynolds was only an employee, and not a tenant, and the title to the crop remained in the landlord. Reynolds, under such a contract as the answer set up, had the right to demand of the landlord only the balance of the proceeds of the crop left after paying the debts due her for money and supplies furnished to enable him to make the crop. If she furnished the tenant a cow and calf or medicines and services of a physician when needed by him to enable him to live and make the crop, she would under the terms of the contract, as shown by

Bourland's testimony, be entitled to hold the crop for the payment of such debts. *Tinsley* v. *Craige,* 54 Ark. 346; *Hammock* v. *Creekmore,* 48 Ark. 263; *Parks* v. *Webb,* 48 Ark. 293.

It follows from this that in our opinion the court erred in giving the instruction asked by the plaintiffs, and which is set out in the statement of facts, for that instruction told the jury as a matter of law that Mrs. Bourland had no right to hold the proceeds of the crop for the payment of the cow and calf sold by her or for the medical supplies furnished. If the contract provided that the employee was to receive only what was left of the proceeds of one-half of the crop after paying all debts due by him to the landlord, whether needed to enable him to make a crop or not, then Mrs. Bourland would have the right to hold the crop for any debt due from Reynolds to her. But if, as the answer alleged, the contract provided that Reynolds was to get one-half of the crop after paying for supplies furnished by Mrs. Bourland to him for the purpose of enabling him to make the crop, it would. then be a question of fact whether he needed the cow and the calf or the other supplies furnished to enable him to make a crop, and whether they were furnished for that purpose or not; for, under such a contract, the landlord could deduct only supplies furnished to enable the tenant to make his crop. But, as milk is a common and useful article of diet, and as probably the cheapest way for a farmer to obtain it is to own a milch cow, such animals might be a part of the supplies needed by a tenant and his family to enable him to make a crop, just as provisions would be needed; while, on the other hand, if he bought them for speculation only, they would not be supplies for making a crop. So medical supplies and attention, when furnished or paid for by the landlord, might be necessary supplies, if needed to enable the tenant to go ahead with his work. But, under the evidence in this case, the questions arising concerning these matters were questions of fact which should have been submitted to the jury under proper instructions. The law relating to cases of this kind was very clearly stated in case of *Tinsley* v. *Craige,* 54 Ark. 347, and in *Hammock* v. *Creekmore* and *Parks* v. *Webb,* above cited.

We concur in the argument of counsel for appellees that the employee had the right to mortgage his interest in the crop; but

if, as the answer alleged, his interest was only what was left after paying all debts due the landlord for money or supplies to make the crop, the mortgagee can get no more than the employee could get. But, as the mortgage was valid to that extent, the instruction asked by the appellants was wrong, and was properly refused.

Counsel for appellees contend that the bill of exceptions does not show that it contains all the instructions given, but there is nothing in it that indicates that other instructions were given, and it would be a violent presumption to suppose that the other instructions could cure the defect of the one given, for it definitely stated that certain claims of the landlord must not be considered by the jury, which instruction, we think, under the evidence here was erroneous.

For the reasons stated the judgment must be reversed, and the cause remanded for a new trial. It is so ordered.

HILL, C. J., not participating.

Decree affirmed.

HILL, C. J., absent and not participating.