[Civ. No. 333. Fourth Appellate District.—April 1, 1931.]

C. S. MERRIMAN, Respondent, v. JOHN MARTIN et al., Defendants; CARNINE–HOWDEN CORPORATION (a Corporation) et al., Appellants.

G. L. Aynesworth, Theodore M. Stuart, J. K. Reeder and W. D. Crichton for Appellants.

Arthur Frame and Frank Kauke for Respondent.

JENNINGS, J.—This is an appeal from a judgment distributing the proceeds of a crop of raisins delivered to the defendant Sun-Maid Raisin Growers of California, a corporation, pursuant to the provisions of a co-operative marketing contract. The crop was grown on land which was the property of the appellant Carnine-Howden Corporation. For convenience the Sun-Maid Raisin Growers of California will hereinafter in this decision be referred to as the Raisin Association and the Carnine-Howden Corporation as The Corporation. On April 9, 1923, The Corporation and the Raisin Association executed a marketing contract by which The Corporation agreed to sell and the Raisin Association agreed to buy all of the raisin grapes to be produced on the land of The Corporation described in the contract, during the years 1923 to 1937, inclusive, at prices to be determined as set forth in the contract. The contract contained the following provision relative to the title to the crops: "This instrument is intended by the parties to pass to and vest in the buyer a present title and right of possession to all of the crops of raisin grapes covered thereby."

On January 25, 1929, The Corporation, appellant herein, entered into the following written agreement with the defendant John Martin:

"The Carnine-Howden Corporation, a corporation, as owner hereby agrees to rent to John Martin, as renter, the NE ¼ of SE ¼ of Sec. 13, Twp. 13 S. Range 18 E., con-

sisting of 40 acres, planted to Thompson vines, for the season of 1929, on the following terms and conditions:

"The owner agrees to furnish the horse tools and sweat boxes now on the ranch. The renter will furnish team, feed, sulphur, trays, gasoline and oil for pumping plant and will furnish all labor needed. It is understood that he is to prune and tie up the vines, dispose of the brush, irrigate the vines, plow, cultivate and sulphur the vines, harvest the crop and deliver the raisins to the Sun-Maid Raisin Growers Association in the name of the owner; all this work to be done in a farmerlike manner and according to the customs of the country. Any repairs to the pumping plant, are to be made by the owner.

"It is further understood and agreed that the renter will use reasonable effort to control and prevent Bermuda, Johnson Grass and other noxious weeds from growing on the place.

"It is understood and agreed that the renter has entered into a contract with A. Arnbrister and others, to prune and tie up the vines for the sum of Four Hundred Dollars ($400) and the renter owner will give a joint note for the same, payable Nov. 1st, 1929, at 7% interest; said note to be paid out of the first money received for the crop and is to be deducted from the first moneys due the renter.

"It is further understood and agreed that if the above covenants are kept, as compensation to the renter, he shall receive the first Thirty Dollars ($30) per ton received from the sale of the raisins or green grapes, less amount paid on the note referred to above; and the next Twenty Dollars ($20) per ton shall go to the owner. Any moneys received on the crop over and above Fifty Dollars ($50) per ton, shall be divided on the basis of 60% to the renter as further compensation, and 40% to the owner.

"It is understood and agreed that renter can have all the apricots growing on the border of the vineyard, except a few boxes for the home use of the owner.

"The renter hereby promises and agrees to quit and deliver up to the premises to the owner on or about the 31st day of December, 1929, in as good condition (reasonable use and wear and damage by the elements excepted) as the same are now; and further agrees that he will not make nor suffer any waste thereof.

"It is understood and agreed that the owner may enter upon the premises at any time for the purpose of inspecting the work.

> "CARNINE–HOWDEN CORPORATION, Owner.
> "By N. E. CARNINE,' President.
> "JOHN MARTIN, Renter.

"Dated—Fresno, California, January 25th, 1929."

At the time this written contract was entered into, a verbal agreement was made between the defendant Martin, the appellant Bank of Italy, and the president of the appellant Corporation, that The Corporation, for the purpose of furnishing Martin with funds necessary for the production of the crop during the season of 1929, would borrow $1,000 from the Bank of Italy on the security of the entire crop. On February 13, 1929, The Corporation executed its promissory note in favor of the Bank of Italy and as security for the payment of the note, executed a mortgage on the entire 1929 crop, which mortgage was recorded on February 15, 1929. The sum of $1,000 was advanced to The Corporation by the Bank of Italy in installments. From the money thus advanced by the bank, The Corporation paid over to defendant Martin the sum of $545, retaining the balance for its own use. On August 22, 1929, The Corporation gave the Bank of Italy, as security for the note for $1,000 executed on February 13, 1929, an order on the Raisin Association for the entire proceeds of the crop. This order contains a provision that it shall be ineffective until assented to in writing by the Raisin Association and there is no evidence that it was so assented to by the Raisin Association, which is immaterial in our view of the case. The entire proceeds from the 1929 raisin crop less the sum of $100 due the Raisin Association from The Corporation was, however, paid over to the Bank of Italy during the pendency of the action, by stipulation of the parties. In the meantime, on February 19, 1929, defendant Martin executed to respondent a note for $200 secured by a crop mortgage on the entire crop to be produced on the premises during the season of 1929. This mortgage was recorded on March 1, 1929. On September 18, 1929, a similar crop mortgage, purporting to cover the entire crop, was executed by defendant Martin to secure the payment of a note for $1200 which he had executed on the same date. This latter mort-

gage was recorded on September 18, 1929. It appears that respondent advanced to defendant Martin a total of $1630.38. It also appears that in addition to the sum of $545 paid over to defendant Martin from the proceeds of the one thousand dollar note executed by The Corporation on February 13, 1929, The Corporation made further advances to defendant Martin which amounted to $228.97. On September 20, 1929, the respondent and N. E. Carnine, president of The Corporation, borrowed from the Bank of Italy on their joint note the sum of $500, which was used in paying expenses incidental to harvesting the crop of raisins. Each of the appellants A. L. Madison and Samuel Vucovich was a judgment creditor of defendant Martin and each served writs of execution on the Raisin Association, the Bank of Italy, and The Corporation after delivery of the crop to the Raisin Association and before the present action was instituted. These levies were upon whatever moneys might be due to defendant Martin from the Raisin Association, the Bank of Italy, or The Corporation.

Under the foregoing facts, the trial court found that defendant Martin owned sixty per cent of the crop produced and The Corporation owned forty per cent of the crop; that the mortgage executed by The Corporation on February 13, 1929, to the Bank of Italy was a valid lien on The Corporation's interest in the crop and that the two mortgages of respondent constituted valid and prior liens on defendant Martin's interest. As conclusions of law, the court held that the joint note of respondent and The Corporation for $500 and a claim for $400 mentioned in the contract between defendant Martin and The Corporation should be paid out of Martin's share of the proceeds of the crop and the balance of Martin's share should be paid to respondent and applied on defendant Martin's debt to respondent and that the $1,000 note to the Bank of Italy should be paid from The Corporation's share of the proceeds of the crop and that The Corporation was not entitled to deduct advances made by it from defendant Martin's share of the proceeds of the crop. Relief was denied to appellants Madison and Vucovich.

In this appeal from the judgment thus rendered the principal contention made by counsel for the appellant Corporation is that the purported crop mortgages executed by

the defendant Martin in favor of respondent created no lien on the crop or the proceeds of the crop, for the reason that defendant Martin had no interest in either the crop or its proceeds. ■ In this connection, it is pointed out that under the terms of the co-operative marketing contract executed by the Raisin Association and The Corporation on April 9, 1923, it was specifically provided that it was the intention of the parties that title to all crops of raisins for the various years covered by the contract should pass to and vest in the Raisin Association. The identical language regarding transfer of title, which appears in the co-operative marketing contract here under consideration, was construed by the Appellate Court for the First Appellate District on February 6, 1929, and it was held that the use of the language clearly expressed the intention of the parties that present title to crops thereafter to be grown should pass to and vest in the buyer (*Sun-Maid Raisin Growers* v. *Jones*, 96 Cal. App. 650 [274 Pac. 551]). It may, therefore, be conceded that defendant Martin had no legal title to any part of the 1929 crop of raisins grown by him on land of The Corporation. ■ It is next urged that defendant Martin had no interest in the proceeds of the crop for the reason that the contract entered into between him and The Corporation was not a lease or a cropping contract, but was a mere employment or hiring contract which conferred upon him nothing more than a claim or a right to demand a share of the proceeds, a chose in action incapable of being the subject of a mortgage. The single element that lends color to appellants' contention in this regard is that the language of the agreement characterizes the benefit to be derived by the occupant of the land as "Compensation". But a well-recognized rule of interpretation requires consideration of the instrument as a whole for the purpose of discovering the intention of the parties (*Stockton Sav. & Loan Soc.* v. *Purvis*, 112 Cal. 236 [53 Am. St. Rep. 210, 44 Pac. 551].) The language of the agreement wherein The Corporation is denominated "Owner" and defendant Martin is entitled "Renter", the owner agreeing "to rent" the described land for a definite term, is language usually employed in lease contracts. Certain provisions calling for the surrender of the premises in good condition on a specified date and per-

mitting re-entry by the owner for inspection of the work, indicate that possession was intended to be surrendered by the owner to the occupant. There is also a covenant against waste. When the instrument is analyzed in its entirety, it manifestly appears that the parties intended something more than a mere hiring agreement and that a fair interpretation indicates that it is either a lease or a cropping contract. ■ While it is clear that a mortgagor must possess some interest in the mortgaged property in order that a lien may be created by the mortgage (11 C. J. 428), it is also true that a limited or special interest or an equitable interest is sufficient to support the mortgage. In *Fountain* v. *Fountain,* 7 Ga. App. 361 [66 S. E. 1020], the rule is thus stated: "It is the rule that any interest in property, whether it be a legal interest or a mere equity, may be mortgaged. (20 Am. & Eng. Ency. of Law, 2d ed., at p. 915.)" In numerous instances it has been decided by the courts of various American jurisdictions that an occupant of land who holds under an instrument that gives him a specified share of the crops to be produced on the land, has an interest in the crops that is capable of being the subject of a mortgage even though the legal title is reserved in the land owner (*National Bank of Wheaton* v. *Elkins,* 37 S. D. 479 [159 N. W. 60]; *Forman* v. *Proctor,* 9 B. Mon. (48 Ky.) 124; *Alexander* v. *Zeigler,* 84 Miss. 560 [36 South. 536]; *Fountain* v. *Fountain,* 7 Ga. App. 361 [66 S. E. 1020]; *Meador* v. *Cullison,* 52 Colo. 172 [120 Pac. 145]). In *Bourland* v. *McKnight,* 79 Ark. 427 [4 L. R. A. (N. S.) 698, 96 S. W. 179], the contract between the land owner and another required the latter to work the land and raise the crop, title to remain in the land owner and the other to be entitled to one-half of the proceeds after deducting all debts due by him to the land owner. It was held that the relation of landlord and tenant was not created by the contract but that it was a mere employment, but that nevertheless one thus employed to raise a crop on another's land has a right to mortgage his interest therein.

We are therefore of the opinion that respondent's mortgagor, Martin, by virtue of the written agreement between him and The Corporation, had an interest in the proceeds to be derived from the sale of the raisin crop grown by him

on land of The Corporation and that this interest was capable of being mortgaged.

It is, however, urged that, since the mortgages on which respondent relies were crop mortgages, which the mortgagor could not legally execute by reason of the fact that legal title to the crop had vested in the Raisin Association, therefore such attempted mortgages are entirely invalid and incapable of creating a lien of any character. The mortgages to respondent are, however, reasonably capable of being construed as mortgages of the interest which the mortgagor had in the proceeds of the crop. Where the instrument is capable of a construction that will give to it legal vitality and effect and will result in accomplishing the manifest intention of the parties, such construction is proper (*Belden* v. *Farmers' etc. Bank,* 16 Cal. App. 452 [118 Pac. 449].)

Since the mortgages by defendant Martin to respondent are to be upheld as valid mortgages creating a lien in favor of respondent on Martin's interest in the proceeds of the crop, it follows that they are superior to the claim of appellant Corporation for advances made by it to Martin, as it is not pretended that respondent had either actual or constructive notice of such advances prior to September 20, 1929. The lien of respondent's mortgages is likewise superior to that of appellant Bank of Italy, which holds a crop mortgage executed by The Corporation alone. This crop mortgage can only be construed as attaching to the interest of The Corporation in the proceeds of the crop. Defendant Martin did not join in its execution. There is no evidence that respondent had actual notice of the arrangement whereby the bank loaned the $1,000 on the security of the mortgage or of the existence of the mortgage and the recordation of this mortgage cannot be held to give constructive notice to respondent that there was any claim against Martin's share in the proceeds of the crop. It was properly held that this mortgage constituted a valid lien against the appellant Corporation's share of the proceeds.

As to appellants Madison and Vucovich it appears that their claims rest on levies of writs of execution made subsequent to all the mortgages and are dependent upon whatever surplus might be found to be remaining, and as

there is no surplus of defendant Martin's share these appellants were properly denied relief.

The judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 30, 1931, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 28, 1931.