[Civ. No. 1139. Fourth Appellate District.—June 26, 1934.]

PACIFIC STATES SAVINGS AND LOAN COMPANY (a Corporation), Appellant, v. G. L. STROBECK, Respondent.

428

John L. Mace for Appellant.

Philip Storer Thacher and Lester J. Penry for Respondent.

HAINES, J., *pro tem.*—The record in this case shows that on February 28, 1929, one Benbough, referred to in respondent's answer as now operating under the name "H. L. Benbough Ltd.", and in the findings as "Benbough Furniture Company", sold to one Todd, under a conditional contract of sale, certain listed furniture and furnishings placed in the premises known as the Todd Apartments at San Diego, California, for $10,331.88. There were also placed in the said apartments electric refrigerators and refrigeration units having no connection with the conditional sales contract. Todd, in November of the same year, sold the apartment house property to Charles O. Matthews and Eunice B. Matthews, who financed in part their purchase by a loan in the sum of $38,000, obtained from appellant Pacific States Savings and Loan Company, to secure the repayment of which they executed three instruments running to Pacific States Auxiliary Corporation as trustee and to appellant as payee, to wit, a deed of trust on the real property with the improvements thereon, constituting the Todd Apartments, a chattel mortgage, in the usual form and with the statutory affidavit of good faith, on the electric refrigerators and refrigeration units, and a third instrument which is in form an assignment or bill of sale of the furniture and furnishings but which recites that it is given in consideration of the loan and as additional security for the $38,000 promissory note which is thereupon set out therein in full. To the third instrument was appended the affidavit of good faith required by law in the case of chattel mortgages. This third instrument is not formally dated, but the attached affidavit bears even date with those on the mortgage affecting the refrigerators and refrigeration

units, to wit, December 2, 1929. Both the chattel mortgage affecting the refrigerators and refrigeration units and the instrument affecting the furniture and furnishings, were on that date regularly acknowledged and shortly thereafter recorded in the recorder's office where they were copied into the record of chattel mortgages. Benbough knew of the transfers from Todd to the Matthews and consented to them and he transferred the account on his books to the names of the Matthews.

After the execution of these instruments the Matthews made various payments on account of the conditional sales contract to Benbough, and then transferred both the real and personal property to one Kistner for whom they seem to have been really acting from the outset. After this transfer Kistner made further payments to Benbough on the conditional sales contract. On July 3, 1930, there remained an unpaid balance due Benbough in this contract of $4,932.31, and on that date Kistner having sold the Todd Apartments, also executed a bill of sale of the furniture and furnishings, but not of the refrigerators or refrigeration units to the purchaser of the apartments, Strobeck Finance Company, a corporation, in which respondent G. L. Strobeck was a stockholder and of which he was the president. The transfers from Kistner to the Strobeck Finance Company were in pursuance of a written contract which recited that the realty was encumbered by the trust deed made to secure appellant's note, but that the furniture and furnishings were unencumbered other than by the balance owing to Benbough. Strobeck acted personally for the Strobeck Finance Company in negotiating this purchase, and though he then knew that the realty was mortgaged to secure the $38,000 note to appellant the evidence conflicts as to whether he was at the time actually told that the furniture and furnishings were encumbered by the instrument affecting them executed by the Matthews to appellant. In view of the findings it must now be assumed that he was not. Benbough consented to the transfer to the Strobeck Finance Company, and changed on his books the account with respect to the conditional sales contract to the name of Strobeck Finance Company. The latter was heavily indebted to Strobeck and placed considerable property, including the interest so acquired in the conditional sales contract, in some sort of a trust to secure him.

Subsequently the Strobeck Finance Company changed its name to Prudential Guaranty Corporation. Under both names it continued the making of payments on the conditional sales contract. While matters were in this condition Strobeck, apparently for the purpose of assisting the Prudential Guaranty Corporation and protecting his security under the trust that it had constituted on this and other property, by virtue of which he is described in the findings as having then been "mortgagee thereof", paid from his own funds $500 to Benbough on the conditional sales contract, that is, $200 on August 23, 1931; $100 on January 21, 1932, and $200 on March 9, 1932. At some time not definitely fixed in the record, after making at least the first two of these payments, but while a balance still remained owing to Benbough, Strobeck actually learned that appellant Pacific States Savings and Loan Company held the instrument affecting the furniture and fixtures and after that, to wit, on June 16, 1932, having severed his connection with the Prudential Guaranty Corporation, he received from it, still as security for the indebtedness which it owed him, a bill of sale on the furniture and fixtures. On the next day he paid to Benbough $974.79 in lieu of a balance of $1,020.79 then still owing on the conditional sales contract and took from him an assignment of the vendor's rights under that contract.

Default having been made on the $38,000 note after certain payments both of principal and interest had been made thereon, appellant Pacific States Savings and Loan Company caused proceedings to be commenced to foreclose the deed of trust upon the real estate and improvements constituting the Todd Apartment property and at the same time filed the present action against respondent Strobeck, the Matthews and the Prudential Guaranty Company, designated in its complaint by its former name, Strobeck Finance Company, to foreclose the chattel mortgage on the refrigerators and refrigeration units and also to foreclose, as a chattel mortgage, said instrument executed by the Matthews to appellant affecting the furniture and furnishings. In the complaint it was alleged that the value of the realty, that is, the Todd Apartment property, had so far deteriorated as not to be in excess of $20,000, and that appellant proposed to bid that sum or less for it and that it would

be necessary for appellant to resort to what were claimed to be the two chattel mortgages in order to realize the rest of the indebtedness due it. Pending the litigation the realty was sold at trustee's sale for $21,457.60, resulting in a deficiency on the Matthews' note to appellant in excess of $14,000. The instant action being brought to trial, Strobeck having answered, but the other defendants being in default, judgment was rendered by the trial court that appellant Pacific States Savings and Loan Company recover from the Matthews $14,488.37, plus attorney's fees and costs, all of which were adjudged to constitute a lien in appellant's favor on both the refrigerators and refrigeration units and also on the furniture and furnishings, except as against Strobeck, as to whom appellant's right to a foreclosure as against any of the personal property was by the judgment made conditional on appellant's payment to him within thirty days after its entry, of $4,932.31, constituting the aggregate still owing on the conditional sales contract when the Strobeck Finance Company took it over, and treated in the findings as the aggregate of all the payments made on the conditional sales contract either by Strobeck in person or by his immediate predecessor in interest, the Strobeck Finance Company, now known as the Prudential Guaranty Corporation, although, as we saw, the evidence shows that in his final adjustment with Benbough, Strobeck in fact paid him for his remaining interest in the contract somewhat less than the amount then actually due him. It is from this judgment that the appeal before us is taken.

It is conceded that appellant should have been given an unconditional decree of foreclosure as to the refrigerators and refrigeration units upon which it held a duly recorded chattel mortgage of unquestioned validity and which was neither any part of the property involved in the conditional sales contract nor yet, so far as the record before us shows, ever conveyed to either the Strobeck Finance Company or to respondent Strobeck at all.

■ The interest of a purchaser under a conditional contract of sale, though it does not amount to a legal title, may be made the subject of a chattel mortgage which will be good otherwise than as against the vendor (11 C. J. 17; *Chase* v. *Ingalls*, 122 Mass. 381; *Dame* v. *Hansen & Co.*, 212 Mass. 124 [98 N. E. 589, Ann. Cas. 1913C, 329, 40 L. R. A.

(N. S.) 783]; *Keepers* v. *Fleitmann*, 213 Mass. 210 [100 N. E. 333]; *Federal Trust Co.* v. *Bristol County Street Ry. Co.*, 222 Mass. 35 [109 N. E. 880, 886]. *Semble*, see *Merriman* v. *Martin*, 113 Cal. App. 167, 174 [298 Pac. 95].) The mortgagee's rights become complete on the performance of the condition by the mortgagor (*Crompton* v. *Pratt*, 105 Mass. 255). There is, of course, no doubt that as between the Matthews and appellant the instrument affecting the furniture and furnishings executed by the former to the latter is good as a chattel mortgage. (Civ. Code, sec. 2973.) The question is of its effect as respects respondent. Section 2956 of our Civil Code is as follows:

"A mortgage of personal property may be made in substantially the following form:

"This mortgage, made the —— day of ——, in the year ——, by A B, of —— , by occupation a ——, mortgagor, to C D of ——, by occupation a ——, mortgagee, witnesseth:

"That the mortgagor mortgages to the mortgagee (here ·describe the property), as security for the payment to him of —— dollars, on (or before) the —— day of ——, in the year ——, with interest thereon (or as security for the payment of a note or obligation, describing it, etc.) A B."

The instrument here involved does not strictly follow the statutory language, but is cast in the form of an assignment or bill of sale and is headed "Assignment". It was, however, accompanied, as we saw, by the affidavit required by section 2957 of the Civil Code and was acknowledged, certified and recorded as contemplated in the case of chattel mortgages by that section. It was held in *Harms* v. *Silva*, 91 Cal. 636, 638 [27 Pac. 1088], that "section 2956 provides a form with which such mortgage must substantially comply", although, in that case, as against a subsequent encumbrancer who had actual knowledge of its existence, a mortgage which (as appears from a reference to it in the opinion in the late case of *Kahriman* v. *Jones*, 203 Cal. 254, 256 [263 Pac. 537]), did not state the due date of the obligation secured by it, was held to substantially comply with the statutory requirements. In *Kahriman* v. *Jones*, *supra*, another mortgage which not only omitted to state such due date but also omitted to give either the date of the note secured by it or the rate of interest that such note bore, was held insufficient to sustain an action of conversion brought

by its holder against a sheriff who had seized the property attempted to be mortgaged, and after citing *Cardenas* v. *Miller*, 108 Cal. 250 [39 Pac. 783, 41 Pac. 472, 49 Am. St. Rep. 84], *Simpson* v. *Ferguson*, 112 Cal. 180 [40 Pac. 104, 44 Pac. 484, 53 Am. St. Rep. 201], *Ruggles* v. *Cannedy*, 127 Cal. 290 [53 Pac. 911, 59 Pac. 827, 46 L. R. A. 371], *Hopper* v. *Keys*, 152 Cal. 488, 493 [92 Pac. 1017], and *Bell* v. *Sage*, 60 Cal. App. 149 [212 Pac. 404], the court concluded by saying (p. 257), that ''we do not feel that the rule of strict compliance, announced by the authorities herein cited, should be further relaxed. That rule has the advantage of certainty in its application and we think it is necessary to effect the purpose of the statute.'' It seems to us, however, that, even though full effect be given to this expression, the particular instrument that we have to consider in the case at bar is sufficient substantially to comply with the statutory requirements. Though it purports to be an assignment, anyone can ascertain from its face that it is given as security only. Though the date of its execution is not stated yet it sets out *verbatim* the note which it secures, thereby giving both the date of the obligation and the date of the maturity thereof, and must evidently have been executed either on the same date with the note or at some time between that date and the time when the affidavit of good faith and the acknowledgment, both of which are dated, were attached to it. In these circumstances the omission of the date of execution does not appear to us material. The instrument does not state the residence or occupation either of the mortgagors or the mortgagee corporation unless, indeed, the occupation of the latter can be sufficiently elicited from its name, and its domicile from the recital that it is organized under the laws of California. But these statements, if made, could have no other purpose than one of identification and we do not think that their omission ought necessarily to be held fatal to the character of the instrument as a mortgage even as to those who were not parties to it. With respect to the provision for the statement of the occupations of the parties in a former statute much more stringent in its terms than the present section 2956, it was said in *Ede* v. *Johnson*, 15 Cal. 53, 57: ''This requirement of the statute must be regarded as matter of description, intended for the purposes of identification, and not as an indispensable requisite of the

mortgage, without which it can have no effect as against third persons.'' Generally speaking, statutory requirements are substantially complied with when everything prescribed by them which can affect substantial rights has been complied with. We are unable to say that the substantial rights of anyone could be prejudiced by such variations from the statutory form as there are in the instrument here involved. We therefore hold that it amounted to a chattel mortgage not only as between the parties to it but as to others as well and that its recordation imparted notice of its contents to the world. From what has been said it follows that the Strobeck Finance Company, subsequently known as the Prudential Guaranty Corporation, and Strobeck himself must be deemed to have had constructive notice of the existence and contents of the said instrument executed by the Matthews to appellant affecting the furniture and furnishings, from the time of its recordation. The findings do not expressly negative actual knowledge, as well, of the existence and contents of this instrument on the part of Strobeck Finance Company when it acquired Kistner's interest in the property though Kistner contracted to deliver the furniture and furnishings free of anything of the sort and, as we saw, it is found that Strobeck himself had no such actual knowledge thereof until a subsequent time and the testimony shows that the negotiations for the Strobeck Finance Company were conducted by him.

From our conclusion that the instrument under discussion amounted to a chattel mortgage and that its recordation resulted in constructive notice to the public of its contents, it follows that on the present foreclosure Strobeck is not entitled to reimbursement as allowed him by the trial court's judgment for all or any part of the $500 which he paid to Benbough from his own funds on the conditional sales contract while that was held by the Prudential Guaranty Corporation, whether under that name or its former name Strobeck Finance Company, and certainly not entitled to have repaid to him anything which that corporation had disbursed from its own funds in making payments on that contract. With respect to the final $1,020.79 owing to Benbough the situation is, however, different. Benbough, who could not be prejudiced by appellant's chattel mortgage, had, as vendor under the conditional sales contract,

436

the absolute right to this money as a condition to parting with his legal title and his assignment to Strobeck for which the latter paid $974.79 subrogated Strobeck to this right. Having acquired Benbough's legal title, which was qualified only by the conditional sales contract under which all of appellant's rights were acquired, Strobeck is, so far as appellant is concerned, in precisely the situation that Benbough occupied immediately prior to the assignment of June 17, 1932. The result of his taking this assignment was to unite in him, so far as appellant is concerned, merely the right of the Prudential Guaranty Corporation to complete its purchase, which, when completed, would still be subordinate to appellant's mortgage, with the right up to that time existing in Benbough to retain the legal title if the $1,020.79 were not paid. "Rights are said to be merged," said the former Supreme Court in *Strout* v. *Natoma Water & Min. Co.*, 9 Cal. 78, 80, quoting Bouvier's Law Dictionary, "when the same person who is bound to pay is also entitled to receive. This is, more properly, called a confusion of rights, or extinguishment." Merger generally is defined in 40 C. J. 649, as the "absorption of a thing of less importance by a greater whereby the lesser ceases to exist but the greater is not increased". Manifestly, the legal title existing prior to the assignment in Benbough was the greater in the sense of being more perfect and, therefore, if it were necessary to treat a merger as having occurred at all it would be more logical to hold that Strobeck's previous rights were merged in those acquired on June 17, 1932, from Benbough rather than *vice versa*. We cannot, therefore, appreciate appellant's claim that this assignment from Benbough to respondent of June 17, 1932, inures to its benefit. ■ However, it is also the law that merger is largely a question of intention and to a great extent depending on the circumstances surrounding each particular case and that the courts will always presume against it whenever it will operate to the disadvantage of a party. (40 C. J. 650.) In the possible, but, we fear, remote contingency that when its sale is permitted, the mortgaged property bring more than is due appellant, it might be of some advantage to Strobeck to treat his rights under his assignment from the Prudential Guaranty Corporation as still existent and unmerged in those derived by him directly from Benbough. In the circumstances we see

no legal obstacle to so treating them. To do so, in the situation here presented, can work no diminution of appellant's rights if the instrument held by appellant is, as we hold it to be, good as a chattel mortgage, imparting by its recordation notice of its existence and contents.

It is ordered that the trial court's judgment be so modified that paragraph three thereof shall read as follows: "That the foregoing sums be and they are adjudged to be a lien upon the property described in the mortgage mentioned in plaintiff's complaint and made exhibit 'B' thereof prior and superior to any lien, charge, claim, right, title or interest of the defendants or any of them; and that said sums be and they are adjudged also to be a lien on the property described in the mortgage mentioned in the plaintiff's complaint and made exhibit 'A' thereof prior and superior to any lien, charge, claim, right, title or interest of the defendants or any of them excepting only as to the answering defendant G. L. Strobeck, and as to said defendant that said sums be and they hereby are adjudged to be a lien upon said mortgaged property described in said instrument and made exhibit 'A' of the complaint prior and superior to any lien, charge, claim, right, title or interest of the defendant G. L. Strobeck upon the payment to the said defendant G. L. Strobeck of the sum of $1,020.79, and the plaintiff is hereby given a period of thirty days from the date this judgment shall become final to pay said sum."

It is ordered also that the judgment be further modified by inserting after the word "That," being the first word of paragraph four thereof, the words "subject to the provisions of paragraph three hereof."

The judgment is so modified, and as modified is affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 23, 1934.