**STEPP v. McADAMS.**

No. 8369.

Circuit Court of Appeals. Ninth Circuit.

March 15, 1937.

Kenton A. Miller and Herbert N. Ellis, both of Los Angeles, Cal., and G. Randolph Miller and Gerald C. Kepple, both of Whittier, Cal., for appellant.

Geo. W. Fenimore, of Los Angeles, Cal., for appellee.

Before WILBUR and GARRECHT, Circuit Judges, and NETERER, District Judge.

GARRECHT, Circuit Judge.

The claim of the appellant is based upon a contract entered into between him and the Elmer Company, Ltd., on November 25, 1929. In that contract, the appellant agreed to furnish and sharpen bits and to do welding work in connection with the company's oil well drilling operations.

Pertinent provisions of the contract follow:

"3. Second Party [the appellant] agrees that he will keep full and correct records as to the bits furnished and welding done and charges to be made on each specific well, all of which records shall be open to the inspection of first party at any time, and all of such charges shall be the same as are made by second party to others for whom second party is performing similar service.

"4. It is specifically agreed by and between the parties hereto that second party shall be paid for the services rendered and to be rendered in connection with the drilling of said oil wells, as hereinafter set forth and in no other manner:

"(a) *As to Jameson Well No. 2.* For all bits furnished and welding done in connection with the drilling of Jameson Well No. 2, first party shall pay and second party shall receive that proportion of the value of Fifty per cent. (50%) of the first oil produced from said well that the total charges of second party for furnishing the bits and welding for said well shall bear to the total cost of first party for the drilling of said well."

With reference to other specified wells, the contract contains provisions identi-

cal or similar to that of paragraph 4(a), supra.

It was stipulated at the hearing before the special master that the Elmer Company had secured no permit from the Commissioner of Corporations of the State of California authorizing the execution of the contract.

The special master reported that by virtue of the contract, the appellant had an equitable lien against the proceeds of the wells, and found that the contract did not create or assign a "security" as defined by the California Corporate Securities Act (Calif.Stat.1929, p. 1251).

The court below sustained the exceptions of the appellee to the special master's report, and made an order disallowing the appellant's claim to a preferred status against the assets of the receivership. The court, however, recognized the appellant as a general creditor for $35,361.38.

The court also held that the special master was correct in determining that an equitable lien had been created in favor of the appellant by virtue of the contract of November 25, 1929, but ruled that "where creditors' rights have intervened as in this receivership, the failure to obtain the permit required by the Corporate Securities Act relegates the claimant to the status of a general creditor with all others who are on such parity with him."

From the order just referred to, the present appeal has been taken.

On November 16, 1936, after the transcript of record herein was filed, the appellant presented to this court a petition for leave to file a petition for an order to show cause, and a petition for an order to show cause, directed to the appellee and to the Guaranty Liquidating Corporation, commanding them to show cause why the latter company should not be made an appellee herein, and be directed to pay the full amount of the appellant's claim. From the brief accompanying the papers filed by the appellant, it appears that the Guaranty Liquidating Corporation, by an order made by the court below on May 5, 1936, received a net amount of $115,483.89 in cash and all other assets of the Elmer Company, Ltd., and that the Guaranty Company's claim and all other claims of the Elmer Company's creditors except that of the appellant herein, "were paid and satisfied, leaving claimant Howard W. Stepp the only creditor whose claim is unpaid."

The appellant also states that, in view of the fact that the Guaranty Company "agreed to pay the claim of said Howard W. Stepp in whatever amount it should be finally allowed and approved," "the alleged error" of the court below as to the appellant's status as creditor "no longer should affect" his rights to payment.

Once the appellant's creditor status is fixed by this tribunal, however, the details regarding the fund from which payment is to be made is a matter that the court below, already acquainted with the complicated affairs of the Elmer Company, is well able to determine. While we undoubtedly have the power to bring in the Guaranty Liquidating Corporation as a party appellee, we believe that the exercise of a sound judicial discretion points the other way.

Accordingly, on November 23, 1936, we denied the appellant's petition that the Guaranty Liquidating Corporation be made a party appellee, etc.

Although the appellee did not file a cross-appeal, he is now contending that the appellant should be relegated to a status inferior to that of even of general creditor. There are several reasons why the state of the record prevents the appellee from maintaining that position, which in reality constitutes an attack upon the decree of the court below.

In the first place, no cross-appeal has been filed. Morley Construction Company v. Maryland Casualty Company, 57 S.Ct. 325, 81 L.Ed. ——, decided on February 1, 1937, and the many cases there cited; O'Brien's Manual of Federal Appellate Procedure, p. 99; Id., 1936 Cum.Supp., p. 85.

Second, in the court below the appellee repeatedly *prayed* that the appellant be given the precise status that was accorded to the latter in the decree, namely, that of general creditor.

Finally, during the hearing before the special master, the attorneys for the appellee "stated that they had no objection to the allowance of the claim of Howard W. Stepp as a general claim," for $35,361.-38, the sum that the appellant is here asking.

Accordingly, in the present appeal we are commencing from the postulate that the appellant is at least a general creditor, for the amount stated. The only question that we will here consider, on the merits,

928

is whether or not the appellant is a preferred creditor, by virtue of the contract of November 25, 1929.

The appellant claims that under the terms of the contract he is entitled to "an equitable lien against the proceeds of the first production [of oil] if, as and when the same comes into being."

■ Nowhere in the record or in the briefs are we able to find any reference to the question of whether or not there was any recordation of the contract; or whether or not the other creditors of the Elmer Company were prior in point of time; or whether such creditors, if subsequent, had actual notice of the contract between the appellant and the company. Since it is the appellant's primary duty to submit a complete record, the presumption arising from the failure to make a proper showing must be one unfavorable to the contentions of the appellant.

■ The law frowns upon secret charges against property. It is well established that equitable liens will not be enforced against creditors without notice, either actual or constructive.

In the leading case of Walker v. Brown, 165 U.S. 654, 664, 17 S.Ct. 453, 457, 41 L.Ed. 865, Mr. Justice White said: "It is clear that if the express intention of the parties was to create an equitable lien upon the bonds or the value thereof, or if such intention arises by a necessary implication from the terms of the agreement, construed with reference to the situation of the parties at the time of the contract, and by the attendant circumstances, such equitable lien will be enforced by a court of equity against the bonds in the hands of Brown or against third persons who are volunteers *or have notice*." (Italics our own.) See, also, Tobin v. Insurance Agency Co. (C.C.A.8) 80 F.(2d) 241, 243.

The rule in California accords with general law. As to chattel mortgages, which are dealt with in the California Civil Code in the title of "Liens," section 2957 of that compilation provides:

"A mortgage of personal property is void as against creditors of the mortgagor and subsequent purchasers and encumbrancers of the property in good faith and for value, unless:

"1. It is accompanied by the affidavit of all the parties thereto that it is made in good faith and without any design to hinder, delay, or defraud creditors;

"2. It is acknowledged or proved, certified, and recorded in like manner as grants of real property."

Expounding the Code provisions relative to unrecorded transfers, mortgages, and liens affecting personal property, when unaccompanied by "immediate delivery," the Supreme Court of California, in Ruggles v. Cannedy, 127 Cal. 290, 297, 53 P. 911, 913, 59 P. 827, 46 L.R.A. 371, said: "The very object of them all—the reason for their being—*is to prevent secret liens upon and interests in personal property*. Says Chancellor Kent (2 Kent, Comm. *523): 'The policy of the law will not permit the owner of personal property to create an interest in another, either by mortgage or absolute sale, and still continue to be the visible owner. The law will not stop to inquire whether there was actual fraud or not, for it is against sound policy to suffer the vendor to remain in possession. * * * It necessarily creates a *secret incumbrance* as to personal property, when to the world the vendor or mortgagor appears to be the owner, *and he gains credit as such*, and is enabled to practice deceit upon mankind.'" (Italics our own.) See, also, Wolpert v. Gripton, 213 Cal. 474, 481, 2 P.(2d) 767; Merriman v. Martin, 113 Cal.App. 167, 175, 298 P. 95, petition for hearing denied by the Supreme Court of California on May 28, 1931; 16 Cal.Juris. 340, § 39.

■ We therefore hold that, in the absence of a showing of the recordation of the contract of November 25, 1929, or of actual notice of such contract brought home to the Elmer Company's other creditors, such contract did not create an equitable lien, enforceable as against such other creditors, upon the proceeds from the oil produced by the wells named therein.

Consequently, regardless of the reasons upon which it was based, the order of the court below, relegating the appellant to the status of a general creditor, was correct.

Accordingly, such order is affirmed.