THE UNITED STATES OF AMERICA, INTERVENORS,

*v.*

GROOME.

EQUITY; EQUITABLE LIEN; PRIORITIES; NOTICE; PRACTICE;
REFERENCE TO AUDITOR.

G and R were copartners and joint owners of a drug store, the partnership agreement reciting that R's half interest was subject to a lien in favor of G for the purchase-money. On a sale by G of his remaining half interest to C, and as part of the consideration for such sale, it was agreed by R, and assented to by C, that he would execute a deed of trust of his interest to secure his debt to G, its execution to be simultaneous with that of the bill of sale to C. The delivery of the bill of sale was procured by C, and thereafter, on his objection, R refused to execute the deed of trust, and a few weeks later C purchased R's interest. *Held—*

1. That the agreement gave G an equitable lien on R's interest, enforceable as to such interest against both R and C.

2. That the lien contemplated was a continuing one upon the undivided interest of R so long as the business should be carried on or the debt to G remain unpaid.

3. That such lien was superior to that of a judgment creditor of C, who, having procured judgment on a claim against C individually and after suit brought by G to establish his lien, was charged with notice of such lien.

4. A decree giving to G one-half the net proceeds of a sale of the business had under an execution upon the judgment in pursuance of a stipulation between G and the judgment creditor, *affirmed.*

5. That such decree contains a mistake in the recital of the costs of the sale, the record failing to show the amount of such costs, will not warrant a reversal; but such mistake should have been called to the attention of the court by a motion to correct the error before appeal taken, or may be corrected by a motion to amend and retax these costs.

6. The reference of a cause to the auditor for the taking of an account is a matter of discretion with the court; and should not

be directed where, on the hearing, the court can ascertain from the evidence the net amount of a fund and the rule of its distribution.

No. 339. Submitted November 2, 1898. Decided December 8, 1898.

HEARING on an appeal by the United States, as intervenors, from a decree in a suit to establish an equitable lien upon an undivided one-half interest in the stock and fixtures of a drug store. *Affirmed.*

The COURT in its opinion stated the case as follows:

The original bill in this case was filed April 13, 1897, by John C. Groome against Wm. F. Rosborough and Frederick S. Coburn to establish an equitable lien upon an undivided half-interest in the stock and fixtures of a drug store known as the Mount Vernon Pharmacy.

John C. Groome, then sole owner, sold an interest of one-half to William F. Rosborough on March 26, 1896, for the sum of $2,500, to be thereafter paid. For this sum Rosborough delivered a note for $1,000, due at twelve months, payable to the order of and endorsed by Wilkinson Call; and executed and delivered certain other notes, payable to the order of Groome, as follows: Two for $125 each, due respectively in six and twelve months; six for $150 each, due respectively in eighteen, twenty-four, thirty, thirty-six, forty-two and forty-eight months; two for $175 each, due respectively in fifty-four and sixty months. On the same day Groome and Rosborough executed articles of partnership to continue in force five years. These recite the terms of the sale aforesaid, and that "the stock, fixtures and business, jointly owned by them as aforesaid, and all profits therefrom and additions thereto, shall be the common stock and property of the partnership." They further declare the undivided half-interest of Rosborough "subject to a vendor's lien in favor of John C. Groome, to the extent of the unpaid portion of the stipulated purchase-money, should default be made in the payment of any of said promissory notes.

Provided, however, that said vendor's lien shall not be subject to enforcement unless and until six hundred dollars of said purchase-money shall be overdue and in default."

It was further stipulated that Rosborough should give his entire time to the conduct of the business, whilst Groome was permitted to do so or not at his discretion. It was also stipulated "that the receipts from said business shall be first applied to the current expenses thereof, including rent, clerk hire and incidentals, payment of debt on soda fountain, and keeping up the stock of said business, and the payment of twelve dollars per week to the said Rosborough for his personal use, in consideration of his personal attention to said business." The profits were to be divided equally, "provided, however, that said Rosborough's share of said profits shall be applied to the payment of his indebtedness herein set forth until the same shall be fully paid and satisfied."

There was a further provision that in case of the death of one copartner, the value of his interest should be appraised in a manner provided, and paid to his representatives.

The business was conducted by Rosborough under his agreement until about December 1, 1896, and went on badly. Partnership debts had accumulated, and nothing had been paid on the indebtedness to Groome. About November 13, 1896, Rosborough and Coburn entered into correspondence with Groome, who was then living at Carlisle, Pa., looking to the purchase by Coburn of Groome's interest, and a partnership between him and Rosborough. On November 30, 1896, Groome executed a contract of sale to Coburn and the same was executed by Coburn on December 4, 1896. This instrument recited a consideration of $1,331.56, payable as follows: $525 in notes of Coburn, one for $50 payable in sixty days, one for $50, payable in four months, and one for $425 payable fourteen months after date; the remainder in the assumption by Coburn of one-half of the partnership debts of Groome & Rosborough, the several items of which were recited.

Coburn went into possession under this contract of sale, and a contemporaneous partnership agreement with Rosborough. On January 7, 1897, Rosborough sold out to Coburn. His notes to Groome and that endorsed by Call, which subsequently went to protest, remained wholly unpaid.

The foregoing facts alleged in the bill are admitted or stand undenied. The bill further alleges that, in connection with the said sale to Coburn, and his entry into partnership with Rosborough, "it was agreed between the parties that Rosborough should execute a deed of trust on his undivided one-half interest in the said business, including therein the stock in trade, fixtures, good will, etc., to secure the payment of the notes given by the said Rosborough;" that this was to be executed and delivered simultaneously with the contract of sale between Groome and Coburn; that by fraudulent representations Coburn secured the prior delivery of the said contract of sale; and that thereafter Rosborough refused to execute the said deed of trust.

Coburn and Rosborough made sworn answers to the bill denying the foregoing allegations, and averring that, in making the purchase from Groome, Coburn had expressly refused to permit the execution of the trust deed desired by Groome, and had entered into the contract with that understanding.

On February 21, 1898, the United States, through the district attorney, filed a petition in intervention, alleging that, on August 31, 1897, they had recovered a judgment against defendant Coburn in the Supreme Court of the District of Columbia, for the sum of $4,200; that execution thereon had been levied upon the entire stock of goods in controversy; and they prayed to be admitted to contest the lien claimed by Groome. It appeared by stipulation in the cause that the stock so seized was sold by the marshal, upon the agreement of all parties, free from all liens; the proceeds to be paid into the registry of the court and there held

to abide the result of the suit. The goods were sold by the marshal for the gross sum of $1,800.

The learned justice who presided on the hearing being of the opinion that the agreement to execute the lien had been proved, entered a decree in favor of the complainant for one-half of the proceeds of the sale, less the sum of $82.08, or one-half the costs of the sale by the marshal. The United States obtained a severance and appealed from the decree.

*Mr. Henry E. Davis*, U. S. Attorney for the District of Columbia, and *Mr. D. W. Baker*, Assistant Attorney, for the appellants:

1. Every agreement, to merit the interposition of a court of equity in its favor, must be fair, just, reasonable, and certain in all its parts, and mutual. If any of these ingredients are wanting, courts of equity will not decree specific performance. *Stoddart* v. *Bowie*, 5 Md. 95; *Preston* v. *Preston*, 95 U. S. 202. The alleged agreement, as contained in the pretended deed of trust, is harsh, unreasonable, and founded upon some vague statements alleged to have been heard by certain witnesses, when the circumstances of the case show that such conversations must never have taken place; there was not sufficient agreement that would warrant the court executing such a trust as contemplated by the decree.

2. In order to bind the United States by the alleged agreement the complainant must show that Coburn and the United States had notice of this alleged agreement, and that that notice was sufficient to put them on their guard.

3. The alleged agreement to make such a trust as the complainant Groome alleges should be made, and the trust itself, if made, would be utterly null and void. A chattel trust on a stock of goods where the mortgagor is to remain in possession is null and void. *Robinson* v. *Elliott*, 22 Wall. 510. In this jurisdiction the same question has also been

fully considered, and a deed of trust given upon a stock of goods which authorizes the grantor to use or dispose of his goods at his own discretion is void as against purchasers. *Fox* v. *Davidson*, 1 Mackey, 102. While some recent decisions of the Supreme Court of the United States hold that there may be a legal trust upon a stock in trade, still the conditions and limitations of that trust must be of such a nature as to do away with the idea that the trust allows a mortgagor to appropriate the money derived from the sale to his own use. It might be contended that, admitting the trust to be void as to the stock in trade, it is good as to the fixtures; this contention is not well founded, for a deed void in part is void altogether. *Smith* v. *Kenny*, 1 Mackey, 12.

4. A mortgage operates upon the property mentioned in the mortgage and not upon after-acquired property. In other words, the mortgage on goods in a store is only on the goods that were in the store at the time that the mortgage was made. *Preston* v. *Leighton*, 6 Md. 88; *Rose* v. *Bevin*, 10 Md. 406. There being no evidence in this case and no claim made on the part of the complainant that the after-acquired stock should be covered by the mortgage, the court erred in considering the present supposed value of the stock, for, admitting that complainant had a lien, the proper value for the court to have considered would have been the value at the time that the trust was to have been made.

*Mr. E. Hilton Jackson* and *Mr. Richard A. Ford* for the appellee:

1. "Equity regards as done that which has been agreed to be done," and compliance with the agreement established in this case will be specifically enforced. Pom. Eq. Jur., Secs. 1235, 1237; *Woarms* v. *Hammond*, 5 App. D. C. 338; *Hume* v. *Riggs*, 12 App. D. C. 355; *Alexander* v. *Ghiselin*, 5 Gill, 138; *Triebert* v. *Burgess*, 11 Md. 464. A written contract to execute a mortgage, clearly expressed, made *bona fide* and for full value, raises an equity for the party claim-

ing under such contract that prevails over the legal rights of creditors. If a contract be as well established, it imposes the same moral and equitable obligations to perform it when verbally made as if made in writing, and the legal effect of the terms of the agreement will be the same in the one case as the other. *Alexander* v. *Ghiselin, supra.* A parol contract for a mortgage of personal property, based upon a valuable consideration, may be enforced by a court of equity, if the contract is not such as the Statute of Frauds requires to be in writing, is fully established. In such a case the creditor has an equitable lien on the property agreed to be mortgaged. *Triebert* v. *Burgess, supra.* And in *Alexander* v. *Ghiselin,* it was said that an agreement to execute a mortgage of personal property alone to secure a debt due from one contracting party to the other, to be performed forthwith, is not within the Statute of Frauds. See, also, *Rothholz* v. *Schwartz,* 46 N. J. Eq. 477, a case very similar to the case at bar.

2. Having notice of the agreement, Coburn is bound thereby, especially in view of the evidence that he assented to it. 5 Am. & Eng. Encyc. L., (2d Ed.), p. 1014, and cases cited. This being so, the United States, claiming in Coburn's right, is bound by the notice to the same extent that Coburn is bound. Moreover, it is to be remembered that the bill in this cause was filed nearly five months before the rendition of the judgment by confession in favor of the United States; and it is submitted that this was constructive notice of complainant's claim of right.

3. Having knowledge of the agreement by his codefendant for the execution of the chattel trust, and having himself prevented its execution, according to his own testimony, the defendant Coburn is not a *bona fide* purchaser for value and without notice. A party who is cognizant of an agreement by another with whom he is about to enter into partnership relations to give a deed of trust covering an undivided one-half interest in the business to secure a *bona*

*fide* indebtedness—the purchase price of said half-interest—and assents to such agreement, may not, despite such knowledge and assent on his part, induce such other party to refuse to perform his agreement, and himself purchase that party's interest in the partnership business and assert a valid title thereto in a court of equity as against the party to whom the security was agreed to be given. The present case is even stronger. The testimony conclusively shows that but for such agreement Coburn could not have secured complainant's remaining interest in the business, and was so informed. He can not, therefore, claim a superior right by reason of his purchase of Rosborough's half-interest, and whatever title he has as to that interest is subject to the lien in favor of complainant. And the United States, as a creditor of Coburn, can have no superior rights, first, because Coburn's title was subject to complainant's lien; and, second, because the judgment under which it claims was rendered after notice of complainant's lien. *Hume* v. *Riggs*, 12 App. D. C. 355.

4. The better and more equitable rule is that a provision in a deed of trust of personal property allowing the grantor to remain in possession and dispose of the same in the usual course of trade, until default made, does not render the instrument void *per se*, but the most that can be claimed is that it is *prima facie* evidence of fraud only. 5 Am. & Eng. Encyc. L., (2d Ed.), 993, and cases cited; Bump on Fraud. Conv., (4th Ed.), Sec. 109, p. 105, *et seq.*, where will be found a valuable note on the subject. The cases of *Fox* v. *Davidson*, and *Smith* v. *Kenney*, cited by appellants, have, in effect, been overthrown by the decision of the Supreme Court of the United States in *Etheridge* v. *Sperry*, 139 U. S. 266. And, in a case decided by the Supreme Court of this District, in general term, it was held that the leaving of the vendor in possession of goods sold does not render the transaction fraudulent and void as to creditors, but at most is only *prima facie* evidence of fraud. *Justh* v. *Wilson*, 19

D. C. 529. The question, however, does not arise in this case, for there is here no controversy as to the rights of creditors either of Rosborough or of the partnership.

5. The lien contemplated by the agreement for the execution of the deed of trust was, like that provided for in the partnership agreement between complainant and Rosborough, a continuing one, and covered the interest of the latter until his indebtedness to Groome was satisfied.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. We are of opinion that the allegations of the bill, in respect of the promise of Rosborough to execute the lien upon his half-interest, and the consent of Coburn thereto, as one of the conditions of his purchase of the remaining half-interest from Groome, have been sufficiently established by the evidence.

Groome, his father, and his attorney, all testify positively to these facts, and their statements are consistent with all the surrounding circumstances.

Geo. H. Walker, Groome's attorney, drew all the instruments relating to the transaction, including the contract of partnership between Rosborough and Coburn. He brought that paper to them, saw them execute it, and signed his own name as subscribing witness. He testified that this paper, when executed, contained a recital of Rosborough's ownership of one-half of the stock, with the following words added: "Subject, however, to a certain deed of trust executed to secure the payment of the purchase-money to John C. Groome aforesaid."

These words refer to the instrument that Rosborough had agreed to execute and appear to have been erased from the instrument before it was recorded; but the witness said they were there when the instrument was approved and executed by the parties. This was not denied or explained by either Coburn or Rosborough, both of whom testified in the case. These latter differed with each other, besides, upon a material fact about which neither could have been mistaken. In

addition to the lien claimed in the bill there was an allegation of fraud in the purchase by Coburn of Rosborough's interest, which they denied.    Coburn says that he paid Rosborough $1,600—$300 in cash, $200 in notes, and the remainder in the assumption by him of Rosborough's liability for the partnership debts.    Rosborough says that he received two notes for $100 each, payable respectively in twelve and eighteen months, but no cash.

It follows, from our view of the testimony, that the complainant Groome is entitled to the enforcement of his equitable lien against the one-half interest of Rosborough in the stock, for the purchase-money thereof, as against both defendants, Rosborough and Coburn.    That which they agreed to do in order to obtain Groome's interest will be regarded as if it had actually been done.    *Woarms* v. *Hammond*, 5 App. D. C. 338; *Hume* v. *Riggs*, 12 App. D. C. 355, 364.

2. It is contended, on behalf of the United States, that this deed of trust, if it had been regularly executed and delivered by Rosborough with the knowledge and consent of Coburn, would nevertheless be void as to their right under the execution, because it necessarily contemplated that the mortgagor should remain in possession of the stock of goods, and dispose of the same in the ordinary course of business. Whether such an instrument, containing the clauses in respect of the application of the proceeds of sale to the purchase of new stock, and to the secured debt, that are found in the original agreement between Rosborough and Groome, or without any such stipulations, would, as matter of law, be held void as to the creditors of Rosborough, need not be decided.    The point does not properly arise in the case.    So far as the record discloses, there are no creditors of Rosborough or of the partnership of Coburn & Rosborough.

The United States have no demand against either.    Their claim is confessedly against Coburn individually, and has no connection whatever with the business of the partnership. It does not appear when the indebtedness of Coburn began, and the judgment under which the stock was seized and sub-

sequently sold was obtained whilst this suit was pending. Whatever, then, might have been the effect of such an instrument upon the rights of Rosborough's creditors, it was certainly valid as against Coburn.    *Etheridge* v. *Sperry*, 139 U. S. 266, 276, 277.

The United States, claiming under Coburn, had no better right.    Chargeable, moreover, through the pending suit, with notice of the equitable lien claimed by Groome, when their judgment was obtained and the stock seized thereunder, they could under no circumstance have an equity superior or equal to his.    *Colbert* v. *Baetjer*, 4 App. D. C. 416, 425; *Hume* v. *Riggs*, 12 App. D. C. 355, 367; *Lazarus* v. *Andrade*, L. R. 5 C. P. Div. 318.

3. The decree awards to the complainant one-half of the proceeds of the sale of the stock that have been deposited in the registry of the court, by stipulation, less the sum of $82.08 recited as one-half of the marshal's cost of care and sale; and error has been assigned thereon.

It is contended that the court should have referred the cause to the auditor with direction to ascertain the quality and value of the articles found at the time of the seizure to have been in existence, and in the possession of the parties at the date of the contract for the lien; and also the charges properly taxable against the fund on account of the marshal's reasonable costs aforesaid.

(1) The reference of a cause to the auditor for the taking of an account is a matter of discretion with the court. *Taylor* v. *Insurance Co.*, 1 App. D. C. 209, 217; *Whitaker* v. *Middle States, etc., Co.*, 7 App. D. C. 203, 211.    If, on the hearing, the court can readily ascertain from the evidence the net amount of a fund and the rule of its distribution, there would be no occasion for the further delay and expense that would necessarily attend a reference, and it ought not to be directed.

(2) The new lien contemplated upon the substitution of of Coburn for Groome, as partner with Rosborough, was a substantial renewal of that originally given by the latter

and which has been recited above. It did not enumerate or recite in a schedule the items comprising the stock and fixtures on hand at the time and actually delivered; nor did it, on the other hand, in express terms provide that the lien should attach to the specific articles that might afterwards be added thereto. It seems clear enough, however, that the lien was intended to be a continuing one upon the partnership or undivided half-interest of Rosborough in the stock, fixtures and good will of the business, as long as the business should be carried on and his debt to Groome should remain unpaid.

The items of the stock were necessarily subject to change by sale and substitution in the ordinary course of trade; but the interest of Rosborough in the business, and in the stock on hand, whilst that business continued, and which is the thing that was charged, remained a fixed and definite quantity. That interest might increase or diminish in actual value through the vicissitudes of the business; but the thing charged with the lien remained unimpaired. It was an undivided one-half of the specific stock, or its price if converted into money, of which Rosborough was the owner, at all times during the continuance of the partnership, or would be entitled to upon its dissolution and winding up. This, it is evident, was the real intent and understanding of the parties, and it is that we must look for and follow when ascertained. *Tailby* v. *Official Receivers*, L. R. 13 App. Cas. 523, 547.

The only uncertainty that existed in, or attended upon, the continuation of the lien was in its probable value; there was none in its subject-matter.

In the ascertainment and enforcement of this character of liens, it has been well said: "Vagueness comes to nothing if the property is definite at the time when the court is asked to enforce the contract." *Coombe* v. *Carter*, L. R. 36 Ch. Div. 348, 393; *Tailby* v. *Official Receivers*, L. R. 13 App. Cas. 547.

The stock and fixtures were in the same house, and in use in the same manner, when the bill was filed and when the marshal seized them under the execution in favor of the United States, as the property of Coburn. They were sold by agreement of all concerned, and the purchase-money substituted in their stead for the purpose of the court's decree. Nothing remains but the fund so realized. There are no claims against it but that of Rosborough, to whom complainant succeeds, and that of Coburn, under whom the United States claims. An equal division of the fund, therefore, will satisfy the respective interests of the two partners as they were fixed by their original purchases and their contract of partnership. All that remained then for the court to do was to divide the fund equally between the two claimants.

(3) It is true, as claimed, that the record before us does not show any evidence in support of so much of the decree as directs the specific sum of $82.08 to be deducted from each share, as one-half of the marshal's charges, though it was, no doubt, ascertained from the return or report of the marshal in making the deposit of the proceeds of the sale in the registry of the court, in accordance with the stipulation to that effect. It is conceded by the appellants that the marshal's costs, whatever they may justly be, constitute a proper charge upon the fund to be distributed; indeed, it is in their interest that the decree so orders. This being so, the omission in the record, if it constitute error, would not justify a reversal of the decree. If there was a mistake in the recital of the amount of the costs, it ought to have been called to the attention of the court by a motion to correct the error before taking an appeal; and that may be done hereafter by a motion to amend and retax those costs.

The decree, subject to the foregoing leave for its amendment, if need be, will be affirmed. *It is so ordered.*

*Affirmed.*