

Barbara Hadley Katz, DiPietro, Kantrovitz & Brownstein, P.C., New Haven, Conn., for debtors.

Frederick S. Ury, Sherwood, Garlick, Cowell, Joblin, Diviney & Atwood, P.C., Westport, Conn., for creditor, Westport Bank and Trust Co.

Daniel Meister, Norwalk, Conn., Chapter 7 trustee.

**In re John H. FRIESE and Deborah H. Friese, Debtors.**

**Bankruptcy No. 5–82–01230.**

United States Bankruptcy Court, D. Connecticut.

April 15, 1983.

## MEMORANDUM AND ORDER ON AGREEMENT NOT TO SELL OR ENCUMBER

ALAN H.W. SHIFF, Bankruptcy Judge.

The principal issue arising in this matter concerns the significance of a prepetition "Agreement Not To Sell Or Mortgage" executed in favor of a creditor and recorded on the land records in Stamford, Connecticut.

### I.

On October 25, 1982, the debtors filed a joint voluntary petition under Chapter 7 of the Bankruptcy Code. Previously, on March 23, 1982, the debtors borrowed $18,-000.00 from and gave a "Demand Secured Note" (Note) to the creditor, The Westport Bank & Trust Company (bank). On the same date, the debtors executed the subject "Agreement Not To Mortgage Or Sell" (Agreement) in connection with the property known as 51 Hope Street, Unit # 17B, Stamford, Connecticut.[1] The Note listed

---

17. Paragraph 9 of the Complaint.

1. The Agreement provided in pertinent part "Terms Of Agreement
   The Bank agrees to the following: [Check the box(es) which applies]
   [x](1) The Bank agrees to make a loan (or loans) to you in the amount of $18,000.00;

In return for the Bank's promises as stated above, you agree to the following:
(1) You will not permit or cause any mortgage, lien, attachment, or other legal claim to be placed on the Property;
(2) You will promptly pay or otherwise remove any mortgage lien, attachment or other legal claim placed on the Property by anyone;

the Agreement as security. The Agreement was filed on the Stamford Land Records on March 24, 1982.

The property covered by the Agreement is the debtors' residence. In order to take advantage of their exemption rights, the debtors now seek a determination that the Agreement does not create a valid lien.[2] The bank, on the other hand, contends that "[a]lthough this agreement may not qualify as an encumbrance, it should be seen as a security agreement . . ." similar to a mortgage deed.

## II.

■ Section 101(37) of the Bankruptcy Code defines "security interest" as a "lien created by an agreement." Whether an agreement creates a lien depends on applicable state law. *See Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). The only Connecticut decision which specifically discusses the effect of an agreement not to mortgage or sell appears to be *Palmeri v. Allen,* 30 Conn. Supp. 56, 299 A.2d 552 (Conn.C.P.1972).[3] In that case, the court, noting, *inter alia,* the absence of a granting clause, concluded that the agreement did not vest any valid inter-

> (3) You will not sell or convey the Property without the Bank's written consent; and
> (4) If you fail to keep your promises, all of your debts to the Bank will at once become due and payable in full."

**2.** The debtors filed an application but should have proceeded by commencing an adversary proceeding. *See* Bankruptcy Rule 701(2). Nevertheless, rather than allow form to dominate substance, I will overlook the procedural defect and address the merits of the debtors' claim.

**3.** The agreement in *Palmeri* provided in pertinent part

"The undersigned hereby agree(s) not to further mortgage, or sell the property, . . . so long as any part of a loan . . . or any interest due thereon, or any renewal in part or in full thereof, remains unpaid to [the lenders]. No increase will be made in the existing first mortgage on said property, nor shall any subsequent encumbrance, whether by a second mortgage or otherwise, be placed or be permitted to be placed on said property without the expressed written consent of [the lender]. We further agree that should said property

est in the mortgagor's property. *Id.* at 59, 299 A.2d at 554. The *Palmeri* decision is consistent with the basic principle that "[t]o be effective to transfer an interest in realty, a deed necessarily must contain words of present grant." *Dennen v. Searle,* 149 Conn. 126, 132, 176 A.2d 561, 565 (1961) (citation omitted).

Other jurisdictions have similarly held that an agreement not to sell or encumber created no lien in favor of the lender. *Equitable Trust Company v. Imbesi,* 287 Md. 249, 412 A.2d 96 (1980); *Weaver v. Tri City Credit Bureau,* 27 Ariz.App. 640, 557 P.2d 1072 (Ariz.App.1976); *Tahoe National Bank v. Phillips,* 4 Cal.3d 11, 480 P.2d 320, 92 Cal.Rptr. 704 (1971).

In the comprehensive *Imbesi* decision, the court considered the possible ways in which an agreement not to encumber might be characterized as a lien. The court's discussion included an analysis of theories relating to mortgages, equitable mortgages, equitable liens, and negative covenants. The court, citing numerous decisions and commentators, concluded that an agreement not to encumber did not create a security interest.[4] In its final analysis, the court in *Imbesi* stated:

> be sold, any balance of principal on this loan with any interest or other charges thereon will be paid in full at the time of sale . . ."
> *Id.* at 57–58, 299 A.2d at 553.

**4.** Illustrative of the view shared among the commentators that a negative covenant creates no lien is the following passage from 2 G. Gilmore, *Security Interests In Personal Property* § 38.3 at 1017 (1965).

Negative covenants should not, it is submitted, be allowed to operate as informal or inchoate security arrangements, even against third parties with notice. If a creditor wants security, let him take a security interest in some recognized form: mortgage, pledge, an Article 9 security interest or what not. If he wants protection against third parties, let him take possession of the collateral or file. Nothing is to be gained by giving a shadowy effectiveness to informal arrangements which conform to no recognized pattern. The debtor's covenant not to encumber property, like the contractor's covenant not to assign moneys to become due under his contract, should be treated, as on the whole the case law has done, as a covenant "merely

"We have here no homemade security instrument in which the parties labored to produce a lien of some sort but fell short of the legal requirements and thus must be rescued by a court of equity. The form on which this agreement was placed was a printed document prepared by one of the largest banks in the State. We have no instrument which purports in any way to convey or to place a lien upon land. The agreement is barren of anything to indicate an intent to create a lien. We have nothing but an agreement *not* to do a particular thing. In the words of the West Virginia court in *Knott [v. Shepherd Stown Mfg. Co.]*, "[t]he creation of a lien is an affirmative act, and the intention to do such act can not be implied from an express negative." *Id.* 30 W.Va. [790] at 796, [5 S.E. 266 at 269 (1888)]. We agree.

287 Md. at 271, 412 A.2d at 107 (emphasis in original).

Here, the Agreement does not differ in any material respect from the agreement considered in *Palmeri v. Allen, supra.* Specifically, no granting clause is present nor are there any sanctions for breach other than mere acceleration of the debt, which was similarly present in *Palmeri.* Although here, unlike in *Palmeri,* there is a recital of consideration, that provision alone does not convert the negative covenant into a positive grant of a security interest. That the bank's Note was styled a "Demand Secured Note" does not enhance its position. The space on that document requiring a "full description" of the security simply reads: "Agreement not to mortgage or sell on property known as 51 Hope Street, Unit # 17B Stamford, Ct. 06903." It does not provide for a second mortgage or any other form of a security interest contrary to what the bank claims was the intent of the parties. As was summarized in *Chase Manhattan Bank, N.A. v. Gems-By-Gordon, Inc.,* 649 F.2d 710 at 713 (9th Cir.1981): "It is . . . apparent that American jurisdictions will generally not construe a negative pledge agreement, such as in this case, as evidence establishing that the parties intended to create a legal mortgage." The "security" appears to lie in the assurance given the bank that unencumbered assets would be available in the event of default. *See Tahoe National Bank v. Phillips, supra.*

Further, any ambiguity created by the use of the "Demand Secured Note" must be resolved against the bank. *See Tahoe National Bank, supra; Equitable Trust Company v. Imbesi, supra.* That conclusion is reached not because of any unequal bargaining power of the parties; rather, it follows from the natural inference to be drawn when a party, in the business of making loans and taking back mortgages as security, chooses not to use a mortgage deed or some other document revealing an express grant of security. *See also Bartholomew v. Muzzy,* 61 Conn. 387, 393, 23 A. 604, 606 (1892) ("One skilled in such matters [drawing deeds] would undoubtedly have carried out this actual intent of the parties by conveying, in express words . . .").

III.

In view of the foregoing, I conclude that the subject "Agreement Not To Mortgage Or Sell" does not create a security interest in the debtor's property, and accordingly the debtors' request that The Westport Bank and Trust Company be determined to have an unsecured claim should be, and hereby is, granted.

personal"—good enough to give rights against the covenantor for breach, to bring an acceleration clause into play, to constitute an "event of default" under a loan agreement, but not good enough to give rights, whether they be called legal or equitable, in property.