In re Joseph AUMILLER, Debtor.

SOVRAN BANK/DC NATIONAL,
Plaintiff,

v.

UNITED STATES of America, Joseph
Aumiller, and Bryan Ross, Chapter
7 Trustee, Defendants.

Bankruptcy No. 89–00785.
Adv. No. 90–1015.

United States Bankruptcy Court,
District of Columbia.

June 8, 1994.

Lee Calligaro, Washington, DC, for plaintiff Sovran Bank/DC Nat.

Richard Gins, Washington, DC, for defendant Joseph Aumiller.

David M. Katinsky, Washington, DC, for defendant U.S.

## DECISION REGARDING MOTIONS FOR SUMMARY JUDGMENT

S. MARTIN TEEL, Jr., Bankruptcy Judge.

Under the court's consideration is the Motion for Summary Judgment filed by the plaintiff, Sovran Bank/DC National ("Sovran"); the Motion for Summary Judgment filed by the trustee; and the Cross–Motion for Summary Judgment filed by the Defendants, Joseph Aumiller and the United States. The parties assert that there are no genuine issues as to any material fact and that summary judgment is appropriate. The legal issues raised by the parties are 1) whether Sovran has a lien against proceeds from the sale of real estate owned by the debtor; 2) whether the trustee may avoid such lien under sections 544 or 547 of the Bankruptcy Code, 11 U.S.C.; and 3) whether such lien takes priority over a federal tax lien. For the reasons set forth below, the court concludes that Sovran has an equitable

lien against the sale proceeds, and that such lien may not be avoided by the trustee under section 544(a). However, the court finds that there is a genuine issue of material fact as to whether the trustee may avoid Sovran's equitable lien under section 547. For the reasons set forth below, the court reserves judgment on the issue of whether Sovran's equitable lien takes priority over the federal tax lien until after the court decides the avoidance issue under section 547.

## FACTUAL BACKGROUND

Sovran commenced this adversary proceeding seeking a determination of the priority of a lien it claims against property of the debtor, Joseph Aumiller. On January 12, 1989, Joseph Aumiller, Inc. (the "Company"), executed a Promissory Note in the amount of $70,000 in consideration for a loan made to the Company by Sovran. On the same date, Joseph Aumiller ("Aumiller") entered into a personal guaranty of all payments due under the Note, and further executed a document entitled Covenant Not to Encumber and Assignment of Proceeds (the "Covenant") relating to property located at 4429 Burlington Place, N.W., Washington, D.C. (the "property"). The Covenant was filed and recorded with the District of Columbia Recorder of Deeds on February 7, 1989.

Under the terms of the Covenant, Aumiller agreed to execute upon the request of Sovran "such further documents as Lender [Sovran] may reasonably require to cause a lien and encumbrance in favor of Lender to be recorded against the interest of the Undersigned [Aumiller] in and to the Property." Throughout June and July of 1989, Sovran requested Aumiller to execute a deed of trust on the property, but he failed to do so. On August 4, 1989, Sovran filed a collection action against Aumiller in the Superior Court of the District of Columbia. On September 8, 1989, Aumiller filed a petition for relief under Chapter 7 of the Bankruptcy Code.

In addition to Aumiller's indebtedness to Sovran under the guaranty, the Internal Revenue Service has a claim against Aumiller for unpaid taxes. On August 23, 1989, the Internal Revenue Service filed a notice of federal tax lien against Aumiller in the amount of $97,641.20 with the District of Columbia Recorder of Deeds, which lien constitutes an encumbrance against the property. On January 23, 1990, this court ordered that the property be sold free and clear of liens, with the proceeds of sale in the amount of $56,344.83 to be held in escrow pending the court's determination of this adversary proceeding.

On July 5, 1990, Sovran filed a motion for summary judgment, claiming that it has an equitable lien against the sale proceeds that is superior to the federal tax lien. On July 26, 1990, the trustee filed a motion to intervene in the adversary proceeding, claiming that he is an indispensable party to the action. Along with the motion to intervene, the trustee filed an answer and counterclaim, and a motion for summary judgment, claiming that Sovran's interest in the proceeds may be avoided under sections 544 and/or 547 of the Bankruptcy Code. The trustee's motion to intervene was granted by the court.

On July 27, 1990, Aumiller and the United States (hereinafter the "defendants") filed a joint opposition to Sovran's motion for summary judgment and a cross-motion for summary judgment. The defendants argue that Sovran does not have a security interest under District of Columbia law; and, even if it had a security interest, it is inferior to the federal tax lien as a matter of federal law. However, recognizing a potential controversy between the United States and the trustee if the court granted the trustee's motion to avoid Sovran's lien against the proceeds,[1] the

---

1. The controversy arises because a transfer avoided by the Trustee under section 544 or 547 is preserved for the benefit of the estate. 11 U.S.C. § 551. Thus, if Sovran's lien is avoided, the estate would assume Sovran's position in its lien priority contest with the United States. If the United States prevailed, it would be entitled to 100% of the proceeds after payment of administrative claims. 11 U.S.C. § 724(b). However, if the court determined Sovran's lien to be superior, the proceeds would be controlled by the estate and would be divided between priority tax claimants pro rata. Under a pro rata distribution, the State of Maryland, holding a priority tax claim in the amount of $31,320.49, would be entitled to a distribution of 21.88% ($31,320.49/ $143,138.66), whereas the United States, holding a priority tax claim in the amount of $111,-

United States and the trustee entered into a proposed settlement. Under the settlement, the United States and the trustee agreed that if the court granted the trustee's motion to avoid Sovran's lien, the sale proceeds would be distributed first to pay the trustee a 2½% sales commission and compensation for services rendered, then to pay the priority wage claimants, with the remaining funds to be allocated 90% to the United States and 10% to the State of Maryland. The State of Maryland did not object to the proposed settlement, thus eliminating the necessity of deciding the lien priority issue if the trustee prevails in avoiding Sovran's lien.

### DISCUSSION

Before deciding whether the trustee may exercise its powers of avoidance under section 544 or 547 in this case, the court must determine the nature of Sovran's interest, if any, in the proceeds. Sovran claims that it has a lien on the property by virtue of the Covenant, which Sovran contends constitutes an equitable mortgage. Alternatively, Sovran claims that an equitable lien exists as a result of Aumiller's agreement to execute a mortgage upon Sovran's demand and his subsequent failure to do so.

### I. SOVRAN'S INTEREST IN THE PROCEEDS

■■■ Equitable liens have been recognized and enforced in numerous types of fact situations. *See Handler Const. v. Corestates Bank, N.A.,* 633 A.2d 356 (Del.1993) (extensive discussion of equitable mortgages); *Equitable Trust Co. v. Imbesi,* 287 Md. 249, 412 A.2d 96, 99–100 (Md.1980); 9 Thompson, Commentaries on the Modern Law of Real Property, §§ 4711–4713 (1958) (equitable mortgages). One common situation is where there is a written document expressing the parties' intent to make a particular piece of property security for a debt which for some reason fails to constitute a legal mortgage or lien. *Id.* Another situation giving rise to an equitable lien is when there is an unfulfilled promise to grant a lien against an interest in property and equity deems done that which

was agreed to be done. *Id.* Sovran contends that both situations exist in this case.

### A. Does the Covenant Constitute an Equitable Mortgage?

Sovran argues that the Covenant should be treated as an equitable mortgage because the language contained in that written document expresses the parties' intent that the Covenant was to constitute a mortgage upon Aumiller's property described therein. Courts, however, have consistently held that an agreement not to sell or encumber property or an agreement to assign the rents and profits of the property, absent a foreclosure provision or a specific grant of a lien in the property, does not evidence an intent to create a mortgage and therefore fails to create a lien on the property. *See, e.g., Perpetual Federal Savings And Loan Ass'n v. Willingham,* 296 S.C. 24, 370 S.E.2d 286, 288 (Ct. App.1988) (real property agreement containing covenant not to sell or encumber the property and a covenant to assign the rents and profits of the property, but not containing any language of grant or conveyance, was held not to create an equitable lien); *Browne v. San Luis Obispo National Bank,* 462 F.2d 129, 133 (9th Cir.1972) (where Assignment of Rents and Agreement Not to Sell or Encumber Real Property contained no hint of any power of foreclosure and none of the covenants purported to create a lien, document was held not to create an equitable lien upon the property); *In re Friese,* 28 B.R. 953, 955 (Bankr.D.Conn.1983) (although promissory note listed Agreement Not To Mortgage Or Sell as security, Agreement did not create a security interest against the property because it contained no granting clause nor provided for any sanctions for breach other than mere acceleration of the debt).

Sovran argues that the Covenant herein is more than a mere negative covenant not to encumber because it contains both language of assignment as well as a specific promise to execute a lien and encumbrance. Sovran relies primarily upon the following paragraphs contained in the Covenant to distinguish this case from those cited above:

818.17, would be entitled to a distribution of

78.12% ($111,818.17/143,138.66).

6. That this Agreement shall constitute an assignment and pledge of the proceeds of the sale or refinancing of the Property to the extent of the outstanding balance of the Note from time to time and a negative pledge against any and all further liens and encumbrances thereof, in the form of a security interest therein hereby granted to Lender, and Lender shall have the rights and remedies hereby granted, if any, in addition to the rights and remedies granted to secured parties pursuant to the Uniform Commercial Code, and, upon default hereunder or under the Note, Lender shall have the right to pursue whatever legal and/or equitable remedies Lender shall deem necessary and/or appropriate to enforce the intent of this Agreement.

7. That at the request of Lender the Undersigned agrees to execute such further documents as Lender may reasonably require to cause a lien and encumbrance in favor of Lender to be recorded against the interest of the Undersigned in and to the Property.

In response, the defendants contend that if Sovran intended the Covenant to be a mortgage against the property, there would have been no need to request Aumiller to covenant against further encumbrancing the property. More importantly, there would have been no need for Aumiller to agree to execute such further documents as Sovran may require to cause a "lien and encumbrance" against the property. The defendants argue that, at best, the Covenant is ambiguous and fails to demonstrate that there is a clear intent to encumber the property.

█ The court agrees with the defendants that the Covenant is ambiguous.[2] While paragraph 6 of the Covenant contains language which appears to grant Sovran a security interest, it is not clear whether the security interest is in the property itself or in the proceeds of the sale or refinancing of the property. Even if paragraph 6 is construed as granting Sovran a security interest in the property, it is not clear whether there was a present grant of a security interest or merely

an agreement to grant a security interest at a future date. Based upon the language contained in paragraph 7, the Covenant can be construed as an agreement by Aumiller to grant a security interest in the property at a future date, upon the request of Sovran, and at that time execute the necessary documents to perfect that interest. Any such ambiguity must be resolved against Sovran because it is the party who drafted the document and is in the business of making loans and taking back mortgages. *Friese*, 28 B.R. at 955 (natural to infer that no lien was intended when a party in the business of making loans and taking back mortgages as security chooses not to use a mortgage or some other document revealing an express grant of security). *See In re Slover*, 71 B.R. 9, 12–13 (Bankr.E.D.Mo.1986) (bank cannot be permitted to transform an agreement into a mortgage or deed of trust and thus deprive the unsecured creditors of the assets of the estate where it occupied a more powerful bargaining position than the debtors and deliberately chose to use an agreement not to encumber or transfer property in standardized form). The court will not rectify Sovran's decision to not use a mortgage or a deed of trust in the first instance by construing the Covenant as creating a security interest in the property.

**B.** *Does Paragraph 7 of the Agreement Give Rise to an Equitable Lien?*

█ Alternatively, Sovran claims that paragraph 7 of the Covenant is the kind of written promise that gives rise to a valid and enforceable equitable lien under the controlling law of *Woarms v. Hammond*, 5 App. D.C. 338 (1895), and *United States v. Groome*, 13 App.D.C. 460 (1898).

In *Woarms*, 5 App.D.C. at 340, the parties entered into an agreement for the repayment of a promissory note, which provided that upon default the note shall be secured by a deed of trust on all the real estate of the debtor, and that the debtor "agrees and covenants to execute said deed of trust." The debtor defaulted and the makers of the note

---

**2.** Parol evidence as to the intent of Aumiller and Sovran in executing the Covenant was not offered by any of the parties. Accordingly, the only evidence before the court is the language contained in the Covenant.

(the "complainants") requested in writing that the debtor execute the deed of trust which he had covenanted to execute upon default. However, the debtor neglected to do so. The complainants argued that by virtue of the agreement they had an equitable lien against the debtor's property, or, in the alternative, that the agreement should be specifically performed.

The court quoted Pomeroy's work on Equity Jurisprudence, Sec. 1235, as laying down the rule governing the effect of a contract such as the one before it:

> [E]very express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund, therein described or identified, a security for a debt or other obligation, or whereby the party promises to convey or assign or transfer the property as security, creates an equitable lien upon the property so indicated, which is enforceable against the property in the hands, not only of the original contractor, but of his heirs, administrators, executors, voluntary assignees, and purchasers or encumbrancers with notice.

*Woarms,* 5 App.D.C. at 346–47. Finding that the agreement constituted an express contract to give a lien, the court held that the agreement created an equitable lien upon the lands of the debtor, which should be enforced by a court of equity. *Id.* at 349. Similarly, in *Groome,* 13 App.D.C. at 463, the parties to the sale of a business agreed that one party was to execute a deed of trust on his one-half interest in the business. However, the deed of trust was never executed. Regarding that which the parties agreed to do as if actually done, the court held that the complainant was entitled to the enforcement of an equitable lien against the one-half interest in the business. *Id.* at 469.

In this case, it is clear from the Covenant that Aumiller agreed to execute such documents as requested by Sovran to cause a lien or encumbrance in favor of Sovran to be recorded against his interest in the property. "An agreement to give a mortgage, ..., is treated in equity as a mortgage, upon the principle that equity will treat that as done which by agreement is to be done." *Woarms,* 5 App.D.C. at 347–48; *Groome,* 13 App.D.C. at 469. All the elements necessary for the creation of an equitable lien are present in this case—the promise relates to a particular piece of property and demonstrates the parties' intent that the property will be charged as security for the debt upon Sovran's demand. *Id.* Accordingly, this court regards as done that which Aumiller agreed to do, and concludes that Sovran obtained an equitable lien against the property upon Sovran's demand that Aumiller execute a deed of trust in compliance with the terms of the Covenant.

## II. *Is The Equitable Lien Avoidable by The Trustee?*

Having concluded that Sovran has an equitable lien against the property, the court must address the issue of whether that lien may be avoided under either section 544(a) or section 547. The trustee argues that Sovran failed to perfect its lien against the debtor's real property and that such unperfected interest may be set aside under section 544(a) and/or 547.

### A. *Section 544(a)*

Section 544(a) of the Bankruptcy Code, the "strong arm" clause, bestows upon the trustee the rights of a hypothetical judgment lien creditor and the rights of a bona fide purchaser for value as of the date of the filing of the bankruptcy petition. Although the trustee's strong arm powers arise under federal law, the scope of these powers is governed by the substantive laws of the state in which the property is located, in this case, the District of Columbia. *In re Bridge,* 18 F.3d 195, 200 (3d Cir.1994). Therefore, the relevant inquiry in this case is whether the trustee, clothed with the rights bestowed upon him as a bona fide purchaser or judgment lien creditor pursuant to D.C. law, prevails over Sovran's equitable lien.

Pursuant to District of Columbia law, a deed conveying an interest in real property is not effective against a subsequent bona fide purchaser or creditor without notice unless it is recorded. D.C.Code § 45–

801 (1990); [3] *Manoque v. Bryant*, 15 App. D.C. 245 (1899) (purpose of statute is to protect judgment creditors as well as purchasers against claims of which they had no notice).[4] Because the equitable lien in this case was not recorded, it would not be effective against a bona fide purchaser or judgment creditor who acquired an interest in the property without notice of that equitable lien.[5]

▮ What constitutes notice to which a bona fide purchaser or judgment creditor is subject varies among states. Significantly, the trustee's status under section 544(a) is governed by the state substantive law defining that notice. *See, e.g., In re Probasco*, 839 F.2d 1352 (9th Cir.1988) (debtor in possession could not avoid partner's interest in real property as a hypothetical bona fide purchaser under section 544(a)(3) because it had constructive notice under California law of the partner's interest in the property); *Angeles Real Estate Co. v. Kerxton*, 737 F.2d 416, 420 (4th Cir.1984) (trustee's rights under section 544(a) as judgment lien creditor are subject to prior equitable interests under Maryland law); *McCannon v. Marston*, 679 F.2d 13 (3d Cir.1982) (where possession of property by claimed purchaser put trustee on constructive notice of purchaser's interest under Pennsylvania law, trustee could not avoid purchase of the property under section 544(a)(3)); *In re Roman Crest Fruit, Inc.*, 35 B.R. 939 (Bankr.S.D.N.Y.1983) (where reasonable inquiry would have revealed existence of agreement between debtor and assignee for the sale of debtor's interest in store leases, and knowledge of such agreement was of sufficient magnitude to require hypothetical purchaser to inquire further, assignee's equitable lien could not be avoided by bankruptcy trustee under section 544(a)).

▮ Pursuant to District of Columbia law, a bona fide purchaser or judgment creditor is subject to actual, constructive or inquiry notice. *Clay Properties, Inc. v. The Washington Post*, 604 A.2d 890, 894 (D.C.App.1992) (subsequent bona fide purchaser can be held to inquiry notice); *Kayfirst Corp. v. Washington Terminal Co.*, 813 F.Supp. 67, 72 (D.D.C.1993) (same); *Manoque*, 15 App.D.C. at 261–62 (judgment lien creditor that was held to inquiry notice of the mortgagee's equitable rights took subject to those rights); *Hume*, 12 App.D.C. at 368–69 (failure to record or acknowledge deed does not deprive it of priority over judgment creditor having notice of its existence); *Groome*, 13 App.D.C. at 470 (equitable lien has priority over a subsequent judgment lien creditor who had notice of equitable claim). *See also Harris v. Maryland National Bank*, 165 B.R. 729 (Bankr.D.D.C.1994).

▮ Actual notice is not relevant in the context of section 544(a) as the trustee assumes the role of a bona fide purchaser or judgment creditor without actual knowledge. *McCannon*, 679 F.2d at 16–17 (statute's language renders trustee's actual knowledge irrelevant but trustee may be held to constructive or inquiry notice).[6] Constructive notice, which has generally come to mean record notice, could not exist in this case because the equitable lien was not recorded. *Clay*,

---

**3.** Section 45–801 provides, in pertinent part, "Any deed conveying real property in the District, or interest therein, ..., shall be held to take effect from the date of delivery thereof, except that as to creditors and subsequent bona fide purchasers and mortgagees without notice of said deed, and others interested in said property, it shall only take effect from the time of its delivery to the Recorder of Deeds for record."

**4.** The statute the court referred to in *Manoque* is substantially similar to § 45–801.

**5.** Case law also suggests that under D.C. law a judgment creditor takes the property of the judgment debtor subject to the equitable charges against that property while in the hands of the debtor even if the creditor is without notice of

those charges. *Crosby v. Ridout*, 27 App.D.C. 481, 494 (1906) (citing *Hume v. Riggs*, 12 App. D.C. 355, 367 (1898) ("rule has always prevailed that the equity under a trust or a contract *in rem* is superior to that under a judgment lien")). However, because this court finds that there is notice, it need not address this issue.

**6.** The majority of courts hold that the trustee's rights are not defeated by actual knowledge. *Probasco*, 839 F.2d at 1354–55 n. 2 (collecting cases). *But see In re Hartman Paving, Inc.*, 745 F.2d 307 (4th Cir.1984) (actual knowledge of debtor imputed to debtor-in-possession so as to limit rights as a bona fide purchaser). This court need not decide which view is correct because there is no evidence of actual knowledge in this case.

604 A.2d at 895 n. 15. However, the Covenant was recorded and recordation of that Covenant, which included the agreement to grant a lien upon demand, may be enough to hold a subsequent purchaser or creditor to inquiry notice.

In *Clay*, the court defined inquiry notice as when a purchaser is

... aware of circumstances which generate enough uncertainty about the state of title that a person of ordinary prudence would inquire further about those circumstances. The purchaser is on inquiry notice of all facts and outstanding interests which a reasonable inquiry would have revealed.

*Clay*, 604 A.2d at 895 and cases cited therein.

■ In this case, any hypothetical purchaser or judgment creditor at the time of filing would have had notice of the Covenant between Sovran and Aumiller because it was filed with the Recorder of Deeds. Notice of the Covenant would have generated enough uncertainty about the state of title to Aumiller's property that a person of ordinary prudence would have inquired further to determine whether Sovran requested Aumiller to execute further documents to cause a lien in favor of Sovran to be recorded against the property. *See Handler*, 633 A.2d at 364 (party had constructive notice of equitable lien under Delaware law by virtue of the recordation of unsealed mortgage); *In re Cutty's–Gurnee Inc.*, 133 B.R. 934, 949–57

(Bankr.N.D.Ill.1991) (lender who had actual notice of agreement in which borrower agreed to give first lender a second mortgage upon refinancing was held to inquiry notice of first lender's equitable mortgage interest); *Hartle v. U.S.*, 22 Cl.Ct. 843, 848 (1991) (purchaser had constructive notice under Colorado law of conditions affecting title that were in recorded documents and had duty to make further inquiry into those conditions).

■ Accordingly, the court concludes that the trustee (or any hypothetical purchaser or creditor) was placed on inquiry notice of Sovran's interest in the property and is therefore presumed to have notice of all facts and interests that would have been revealed upon inquiry. Had the trustee inquired as to Sovran's interest in the property on the date the petition was filed, he would have been informed of Sovran's request that Aumiller execute a deed of trust against the property and Aumiller's subsequent refusal to do so. Knowledge of Aumiller's promise to convey a lien or encumbrance upon demand and Sovran's subsequent request would be sufficient to put the trustee on notice of Sovran's equitable interest in the property. As a result, the trustee is limited to the rights of a purchaser or judgment creditor with notice, which under D.C. law are inferior to those of Sovran's. Accordingly, the trustee cannot avoid Sovran's equitable lien pursuant to section 544(a).[7]

7. This case is distinguishable from those in which the court allowed the trustee to avoid an unrecorded equitable lien on the simple basis that in those cases the circumstances did not put the trustee (or a hypothetical purchaser or creditor) on notice, constructive or inquiry. *See, e.g., Bridge*, 18 F.3d at 204 n. 8 (hypothetical purchaser who searched title would have no notice); *In re Hendleman*, 91 B.R. 475, 476 (Bankr.N.D.Ill. 1988) (creditors did not have notice of equitable interest); *In re Chenich*, 100 B.R. 512, 513–15 (9th Cir. BAP 1987) (court found purchaser would not have constructive notice of unrecorded deeds).

Moreover, this court rejects the dicta in *Chenich* and *Hendleman* suggesting that an equitable lien is always avoidable by the trustee. The court in *Chenich* relied upon *Stepp v. McAdams*, 88 F.2d 925 (9th Cir.1937), for the proposition that a trustee "takes title to the real property free from all equitable liens." However, the court in *Stepp* held that "equitable liens will not be enforced against creditors *without notice, either actual or constructive.*" 88 F.2d at 928 (emphasis

added) (citing *Walker v. Brown*, 165 U.S. 654, 17 S.Ct. 453, 41 L.Ed. 865 (1897)). Similarly, the court in *Hendleman* remarked that "[a]n equitable lien in the debtor's property (by definition, unperfected) can never survive attack by a Ch. 7 trustee." 91 B.R. at 476 (citing *In re Einoder*, 55 B.R. 319, 328 (Bankr.N.D.Ill.1985)). *Hendleman's* reliance on *Einoder* was misplaced. The court in *Einoder*, although expressing disfavor of equitable liens, did not hold that an equitable lien in bankruptcy can never survive an attack by a Chapter 7 trustee. Rather, the court correctly stated, "Only if an equitable lien would be sufficient under applicable state law to survive an attack under § 544(a) and if the facts make the equitable lien invulnerable to attack as preferential under § 547 would an equitable lien be good in bankruptcy." *Einoder*, 55 B.R. at 328. *See In re L.D. Patella Const. Corp.*, 114 B.R. 53, 58 (Bankr.D.N.J.1990) (equitable liens valid under applicable nonbankruptcy law are upheld in bankruptcy unless hypothetical purchaser or creditor could avoid the lien) (citing *Lewis v. Diethorn*, 893 F.2d 648, 650–51 (3d Cir.1990)).

B. *Section 547*

The trustee contends that if Aumiller agreed to execute a deed of trust upon the request of Sovran and "it was recorded in July 1989," the lien could be avoided under section 547. Under section 547, a trustee may avoid a preferential transfer of property made on or within 90 days before the date of the filing of the petition to a creditor on account of an antecedent debt while the debtor was insolvent. While none of the parties discuss the elements of a preferential transfer under section 547, it is clear that the transfer of property, in this case the creation of the equitable lien,[8] was made for the benefit of Sovran on account of an antecedent debt, Aumiller's personal guaranty of the loan made to his company, which was made while Aumiller was insolvent (if found to be made within the preference period), and enables Sovran to receive more than it would receive if the equitable lien had not arisen. The only element in question is whether the transfer was made on or within the 90 day preferential period.

Section 547(e) defines when a transfer of real property is made for purposes of determining preferential transfers under the Code. Section 547(e)(2)(A) provides that if a transfer is perfected at or within 10 days of the time it took effect between the parties, then the transfer is deemed to have been made when it took effect. If perfected outside the 10 day period, then the transfer is deemed made at the time of perfection. § 547(e)(2)(B). Thus, the court must determine when the transfer at issue was perfected and when it took effect.

Section 547(e)(1)(A) provides that a transfer of real property is perfected for purposes of section 547 when it is valid against a bona fide purchaser under applicable state law.[9] As this court determined in section II, pursuant to D.C. law, Sovran's equitable lien was valid as against a bona fide purchaser from the time when Sovran re-

quested Aumiller to grant a lien because at that time any hypothetical purchaser would be held to inquiry notice of Sovran's equitable interest.

Remaining is the issue of when the transfer took effect, which is a distinct concept from perfection. Whereas perfection addresses when an interest is deemed to be superior to subsequent competing interests, the concept of taking effect is a determination of when the transfer occurred between the parties. *See In re Kleckner,* 81 B.R. 464, 467 (Bankr.N.D.Ill.1988). In this case, the transfer took effect when the lien attached to the property. An equitable lien, although not judicially recognized until judgment is rendered declaring its existence, relates back to the time it was created by the conduct of the parties. *In re Stoecker,* 143 B.R. 118 (Bankr.N.D.Ill.), *rev'd in part on other grounds,* 143 B.R. 879 (N.D.Ill.1992), *aff'd in part rev'd in part,* 5 F.3d 1022 (7th Cir.1993); *Einoder,* 55 B.R. at 327 n. 29; *Marbach v. Gnadl,* 73 Ill.App.2d 303, 219 N.E.2d 572, 579 (1966) and cases cited therein; *New v. New,* 148 Cal.App.2d 372, 306 P.2d 987, 993 (1957) (equitable lien relates back to acts giving rise to the equity); 51 Am.Jur.2d Liens, § 22. *See also Cutty's–Gurnee,* 133 B.R. at 946–949 (equitable lien attaches at time promise to convey mortgage was made).

As discussed above, Sovran's equitable lien was deemed to arise as a result of the equitable maxim that equity regards as done that which a party has agreed to do. *See* Section I. In this case, Aumiller unconditionally agreed to grant a mortgage upon Sovran's demand. Therefore, the act giving rise to the equitable lien in this case was Sovran's demand that Aumiller execute a deed of trust on the property as promised in paragraph seven of the Covenant. Having promised to give a lien upon demand, he will be deemed to have done so at that time. Accordingly, it is at this time that the lien can be said to have attached to the property

---

8. The Code defines transfer as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest...." 11 U.S.C. § 101(58)[54].

9. Section 547(e)(1)(A) states: "a transfer of real property ... is perfected when a bona fide purchaser of such property from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee."

and that the transfer took effect. Because the transfer was also perfected upon demand, the transfer is deemed to have been made for preference purposes at the time of demand.

 It would be inappropriate to find that the lien relates back to the time the parties entered into the Covenant because Aumiller did not agree/promise to convey a mortgage at that time. *Compare Cutty's–Gurnee*, 133 B.R. at 945–948 (borrower never fulfilled promise to convey a valid second mortgage to the lender when the property was refinanced; court held that equitable mortgage attached at the time the agreement was entered into, notwithstanding the refinancing contingency, because the evidence demonstrated that the refinancing was considered to be imminent and the parties testified they intended to give a mortgage at the time of the agreement)[10]; *Marbach*, 219 N.E.2d at 579 (after equitable lien in insurance proceeds was judicially declared to exist, lien found to relate back to the time the party agreed to name the lender as the loss payee); *Sprague v. Cochran*, 144 N.Y. 104, 38 N.E. 1000 (1894) (where party agrees at the time money was advanced to secure that advancement by executing mortgage but fails to do so, lien attaches when money was advanced). However, even if the lien was found to relate back to the date the Covenant was agreed to, the transfer would still be deemed to have been made at the time of Sovran's demand. Perfection would have occurred more than 10 days after the transfer took effect and thus the transfer would be deemed under § 547(e)(2)(B) to have been made at the time of perfection.

 Accordingly, the transfer the trustee seeks to avoid, the creation of Sovran's equitable lien, is deemed to have been made for preference purposes at the time of Sovran's demand.[11] If Sovran's demand oc-

10. Although there was a contingency in *Cutty's* that could be analogized to the contingency in this case, Sovran's demand, the court in *Cutty's* found that the contingency was imminent. 133 B.R. at 947. In this case, there is no evidence suggesting that at the time the Covenant was entered into, the parties' believed that Sovran's demand would necessarily be forthcoming.

11. This court rejects the notion that all equitable liens are by definition unperfected and therefore avoidable as a preference by the trustee. Under the 1938 Bankruptcy Act, the court was required to consider whether a transfer was preferential as of the time when the last act was done that was necessary under state law to perfect against a bona fide purchaser and a creditor. This provision was designed to prevent the application of the relation back doctrine to the determination of when a transfer was perfected. In 1950, the Act was amended, deleting the bona fide purchaser test with respect to perfection of an interest in personal property. Thus, an interest in personal property was perfected if superior to that of a judgment creditor. Congress, however, aware that in many states equitable liens were valid over a subsequent judicial lien, added section 60(a)(6) to prevent an equitable lien from being treated as perfected for preference purposes unless all overt actions required by state law (if any) to make the lien valid against all third persons (other than trade creditors) were taken. In essence, Congress retained the bona fide purchaser test with respect to equitable liens. *See* 3 Collier's on Bankruptcy, 14th ed. § 60.50 at 1031–44 (extensive discussion of historical treatment of equitable liens in context of preferences).

This addition reflected the general view that "a creditor who failed to take all the steps required to perfect a lien should not be allowed to fall back on an assertion of an equitable lien to frustrate the Bankruptcy Code policy of recognizing only perfected interests in property." *Stoecker*, 143 B.R. at 145 (citing *Einoder*, 55 B.R. at 328). Section 60(a)(6), however, was not included in the Bankruptcy Reform Act of 1978 largely as a result of the view that it was no longer necessary because Article 9 of the U.C.C. treated equitable liens in personal property as unperfected security interests that the trustee, as a judgment creditor, could set aside. *See Einoder*, 55 B.R. at 328 (referring to Gilmore Committee Report on the Bankruptcy Code, H.R.Rep. No. 525, 95th Cong., 1st Sess. 209); *In re Washington Communications Group, Inc.*, 10 B.R. 676, 678–80 (Bankr.D.D.C.1981) (same). Upon careful consideration of the prior provisions, it is apparent that section 60(a)(6) is appropriately viewed as a response to personal property problems and should not be carried forward to today's Bankruptcy Code as to real property. To do so would disregard section 547(e)(1)(A) which expressly incorporates state law notions of perfection and makes no distinction between equitable and legal liens. Nothing in the pre-Code provisions suggests that equitable liens in *real property* perfected under state law against a bona fide purchaser should be deemed unperfected for preference purposes. In any event, in this case Sovran took all the steps it could possibly take to perfect its interest legally in light of Aumiller's refusal to grant a deed. *See In re Rutherford*, 73 B.R. 665, 668 (Bankr.W.D.Mo.1986) (perfection excused where creditor is prevented from perfecting by an uncooperative creditor).

curred on or within 90 days of the filing of the petition, the transfer will be avoidable as a preference. The petition was filed on September 8, 1989. Thus, if Aumiller's refusal was on or after June 10, 1989, Sovran would have obtained its equitable lien on or within 90 days of the filing of the petition and such lien would be avoidable under section 547. However, the only evidence before the court on this issue is the Affidavit of Thomas A. DePont, the loan officer responsible for the account of Aumiller and the Joseph Aumiller Company. Mr. DePont's Affidavit states that "[t]hroughout June and July of 1989, I requested Mr. Aumiller to execute a deed of trust on the property owned by him at 4429 Burlington Place, N.W.,...." There is no evidence as to when Sovran first demanded Aumiller to execute a deed. Accordingly, the court will entertain the introduction of evidence on the issue of whether Sovran made its demand on or before June 10, 1990. If the request was not made until June 10, 1990, or sometime thereafter, Sovran's equitable lien is avoidable under section 547. At this juncture, the court does not decide who has the initial burden of production on this issue. *Cf. In re Martin*, 698 F.2d 883, 887 (7th Cir.1983). The issue is likely one upon which there is at least *some* evidence, with the ultimate burden of persuasion on the trustee.

The court reserves the issue of whether Sovran's equitable lien, if found not to be avoidable under section 547, is prior to the federal tax lien. An appropriate Order will be entered with this decision.